**Clarence E. WATSON,**
**Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary**
**of Health and Human Services,**
**Defendant–Appellee.**

**No. 90–6181.**

United States Court of Appeals,
Sixth Circuit.

Argued May 24, 1991.

Decided July 3, 1991.

D.C. Daniel, Jr. (argued), Daniel, Burton & Thomas, Murfreesboro, Tenn., for plaintiff-appellant.

Joe B. Brown, U.S. Atty., William T. Warren, III, Darrell A. Stewart (argued), Asst. U.S. Attys., Office of the U.S. Atty., Nashville, Tenn., John Jarrett, Dept. of Health & Human Services, Atlanta, Ga., for defendant-appellee.

Before MERRITT, Chief Judge, and GUY and RYAN, Circuit Judges.

PER CURIAM.

Claimant, Clarence Watson, was overpaid $6,265 in social security disability benefits. When his efforts administratively failed to secure a waiver from repayment, Watson instituted this action.[1] The district court concluded, as had the administrative law judge (ALJ), that since Watson was not "without fault" he was not eligible for a waiver.

Upon a review of the record, we conclude that substantial evidence supports the Secretary's decision, and we affirm.

## I.

As a result of heart problems culminating in open heart surgery, Watson was awarded social security disability benefits as of October 1, 1983. All disability beneficiaries have a continuing obligation to notify the Social Security Administration (Administration) if they return to work. Watson did return to work and did notify the Administration in an undated letter received in early 1985. On March 6, 1985, in a work activity report, Watson reported that he had earnings of $1,250 for the period January 15 through February 15, 1985. On March 21, 1985, during a continuing disability review, the claimant advised that he was self-employed as of January 15 and was working an average of 25 hours per week.

As incentive for disability beneficiaries to return to work, they are allowed a nine-month trial work period during which their benefits continue regardless of any additional earnings. After the Administration confirmed that Watson was working and earning a relatively substantial income, on April 25, 1985, he was sent the standard form letter utilized in such circumstances. The letter stated, in pertinent part, that "[w]e have scheduled your claim for review in 09/85 since it appears your 9th month of trial work will end at that time according to information reported to us."[2]

Since a disability beneficiary, even if not working, also can have benefits terminated if the disability abates, the letter also informed Watson that the status of his disability would be reviewed from time to

---

1. We pass no judgment on Watson's counsel's claim that the amount at issue is actually $6,142.

2. Since this was a form letter, this information was conveyed to Watson by the checking of one of the boxes on the form which contained this language.

time. This inquiry is unrelated to any trial work period, since working can result in loss of benefits even if the original disability continues unabated. The form language used in connection with the *disability* review provided:

> 6[x] Your claim will be reviewed from time to time to see if you are still eligible for benefits based on disability or blindness. When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues.

The letter also included a detailed explanation of a "trial work period," which included the following:

> At the end of the 9 months, a decision is made as to whether your work is substantial and gainful. If it is and work continues, benefits are stopped after an additional 3–month adjustment period. If it is not, benefits continue.
>
> . . . .
>
> Your entitlement to disability checks can end at *any* time if your medical condition does not keep you from working. This is true even if you have not completed the trial work period. However, payments will be made for the month disability ends and 2 additional months.

Although the April 25, 1985, letter indicated that there would be a review of the trial work period in September 1985, no such review occurred and the disability benefits payments continued, even though Watson was working regularly. On June 13, 1986, in a work activity report, Watson reported that he began working on January 15, 1985, and that he was then earning $2,000 per month. He also reported that he had contracted with Hubbard Milling Company to sell feed products and drew $1,250 per month from October 1984 through December 1984 but did not work until January 15, 1985. Watson further stated that he expected to earn $26,000 plus a bonus in 1986.

At least partially as a result of this letter, the Administration wrote Watson on July 8, 1986, and informed him:

> This is to notify you that based on the evidence now in your file a determination will have to be made that you demonstrated the ability to engage in substantial gainful work in July, 1985 and that your Social Security benefits should have ceased in September, 1985.
>
> . . . .
>
> Because you worked and earned over $300.00 per month in July, 1985 and the months following it appears that a determination will be made that you had the ability to return to work that was substantial and gainful in July, 1985, you would have been due payments for August and September, 1985, the two months following, but you would not have been due payments beginning October, 1985.

This was just a warning letter and was followed by a letter dated August 2, 1986. The August letter reiterated much of what was in the July letter, but stated in addition:

> On April 25, 1985 you were erroneously notified that it appeared that the 9th month of your trial work period would be September 1985. This was based on your report of March 6, 1985 that you had returned to work January 15, 1985. The evidence in your case shows that you completed a 9–month trial work period in June 1985. Your work in July 1985 was substantial and gainful. Therefore, your last check should have been paid for the month of September 1985. Beginning October 1985, you were not due Social Security disability benefits.

On August 21, 1986, Watson was informed:

> YOUR WORK EFFECTIVE 10/85 WAS CONSIDERED SUBSTANTIAL AND GAINFUL, THEREFORE, YOU WERE DUE NO BENEFITS FOR 10/85 THROUGH 07/86. SINCE YOU WERE PAID $611.00 EACH MONTH FOR 10/85 THROUGH 11/85, $630.00 EACH MONTH FOR 12/85 THROUGH 01/86 AND $630.50 EACH MONTH FOR 02/86 THROUGH 07/86, YOU ARE OVERPAID $6,265.00.

Watson did *not* request a review of this overpayment determination, so its propriety is not before us. Watson did request a

waiver from having to pay back the overpayment.[3] On March 25, 1988, Watson was given a personal conference with respect to waiver of the overpayment. On April 4, 1988, he was notified of the special determination affirming the decision that recovery could not be waived. On May 31, 1988, the claimant filed a request for an administrative hearing. A *de novo* hearing was held by an ALJ on November 4, 1988. On March 17, 1989, the ALJ found that the claimant was not "without fault" because he had continued to accept monthly disability insurance payments after he completed his trial work period even though he had been advised and knew that he would no longer be entitled to benefits.

## II.

Title 42 U.S.C. § 404(b) provides:[4]

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The threshold issue is "fault," and our review is limited to determining whether the Secretary's decision on the "fault" issue is supported by substantial evidence. "The burden is upon the claimant to establish the negative prerequisite ('without fault'), before the Secretary considers the second tier of the waiver statute." *Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir.1982).

As to what constitutes fault, we are aided by the Secretary's Regulations. Title 20 C.F.R. section 404.507 provides in relevant part:

What constitutes fault (except for "deduction overpayments"—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

Against the backdrop of these Regulations, we conclude that substantial evidence supports the Secretary's conclusion that Watson accepted payments, which "he either knew or could have been expected to know [were] incorrect."[5]

Watson's formal education (two years of college), his work history, the transcript of his hearing before the ALJ, and his admitted reading and understanding of the ground rules on trial work periods, all support the conclusion that Watson, at a minimum, should have known something was wrong when he continued to work beyond the nine-month trial period and yet still received disability benefit checks.[6]

---

**3.** In November of 1987, Watson became 65 years of age and eligible for regular social security benefits. In conjunction with filing for such benefits, Watson requested the waiver from the disability overpayment.

**4.** For determinations made after July 1, 1990, section 404(b) now also provides that "any determination of whether any individual is without fault ... shall specifically take into account any physical, mental, education, or linguistic limitation such individual may have...." 42 U.S.C. § 404(b). We need not determine whether this amendment is applicable to our review since the new language does not impact on the

result in this case. Also, this language in substantial part has been a part of the Regulations for many years. *See* 20 C.F.R. § 404.507.

**5.** Stated another way, Watson failed to prove by a preponderance of the evidence that he did not know or should be held to know that he was receiving and cashing benefit checks to which he was no longer entitled.

**6.** Arguably, Watson made an "incorrect statement" (20 C.F.R. § 404.507(a)), which contributed to this error when he reported work commencing in January 1985, when in fact he be-

Like the ALJ and the district court, we are not able to find Watson without fault based upon his claim that he was misled by the Administration. To begin with, "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. It is true that, if the Administration had reviewed Watson's work status in September of 1985, the disability payments would have stopped earlier.[7] However, it is this type of bureaucratic lapse that will benefit a claimant only if he is totally blameless.

In trying to transfer the entire blame to the Administration for this overpayment, claimant places a construction on the April 25, 1985, letter that we find unreasonable. The form letter told claimant that the ninth month of his trial work period would end in September. It then went on to explain the details of a trial work period. The letter also informed him that, *apart* from a trial work period, he would also be subject to periodic reviews to determine if he still was disabled, whether working or not. It is in this latter context that the letter states: "[Y]ou will be contacted if there is any question as to whether your eligibility continues." Watson then argues that since he was never contacted he assumed he was still "eligible."

The problem with this argument, and really the crux of our holding, is that Watson knew he was allowed only a nine-month trial work period during which he could still legitimately receive disability benefit payments. He also knew that at the end of this nine-month period he was still working and earning even more money. The fact that the Administration did not seek to

challenge whether his heart condition remained a "severe disability," as that term of art is used, is irrelevant. It has nothing to do with whether he is earning an income substantial enough to disqualify him for disability benefits.[8]

We are not without sympathy for Watson who has serious medical problems and large medical bills, yet still keeps plugging along in the workplace. However, the repayment is not punitive in nature. A mistake occurred, of which Watson was the beneficiary. Now he has to make the public fisc whole. We do not conclude that Watson set out to cheat the system, only that he had reason to know he was getting a windfall.[9]

AFFIRMED.

---

came gainfully employed in October 1984. We give Watson the benefit of the doubt on this issue, however.

7. It should be noted in this regard that the September date was selected based upon Watson's representation that he only started work in January 1985, when in fact he started in October 1984. *See supra* note 6.

8. We note that this same income is now disqualifying him from receiving regular social security benefits even though he is over 65 years of age and otherwise qualified.

9. We find no merit to the contention that the manner in which the ALJ conducted the hearing deprived the claimant of due process.