95 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ursula M. EVO, on Behalf of William EVO, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-1894.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1996.
 
 Before: MARTIN and DAUGHTREY, Circuit Judges; and BECKWITH, District Judge.*
 PER CURIAM.
 
 
 1
 This is the appeal of a district court order granting summary judgment for the Commissioner of Social Security. The issue presented is whether the Commissioner should have waived recovery of an overpayment of social security disability benefits received by William Evo (now deceased). For the following reasons, we AFFIRM.
 
 I.
 
 2
 William Evo began receiving social security disability benefits due to arteriosclerosis effective January 14, 1982. On September 4, 1986, Evo notified the Social Security Administration that he had returned to work under the regulations allowing for a nine-month trial work period. He stated as well that he was unsure what he should do with disability benefits checks he continued to receive after his return to work, and indicated that he would keep them unless instructed to do otherwise. Based on this letter, the Administration assumed that September of 1986 was the first month of Evo's trial work period.
 
 
 3
 The Administration sent letters to Evo on September 25, 1986, October 20, 1986, and January 14, 1987, requesting that he complete and return work activity reports. There is no indication that Evo ever responded to those requests.
 
 
 4
 On February 26, 1987, the Administration sent Evo a letter informing him that his claim would be reviewed in July of 1987 because that would be the end of his nine-month trial period, and that he should report any events affecting his receipt of benefits to the Administration. Subsequent requests were sent on December 29, 1987 and February 26, 1988, seeking information from Evo about his earnings since 1986.
 
 
 5
 On March 29, 1988, Evo informed the Administration that he had actually returned to work in July of 1986 and had continued working through December of 1987. Evo earned $62,013.00 during that period. Based on this information, the Administration notified Evo on April 11, 1988 that his entitlement to disability benefits had ceased and the last check he should have received was for the month of June of 1987.[1]
 
 
 6
 On August 22, 1988, Evo sent a letter to the Administration stating that he was still working, but requesting continued benefits because he was performing "make work" for an employer who made allowances for his condition. On December 1, 1988, the Administration advised Evo that, due to an administrative error, he and his daughter[2] had received $16,712.30 in excess benefits between June of 1987 and October of 1988. The Administration requested that Evo refund the overpayment. Evo stopped working in December of 1988 and sought to have his benefits reinstated.[3]
 
 
 7
 On January 6, 1989, Evo sought a waiver of recovery of the overpayment on the grounds that he was without fault in causing the overpayment and that recovery would be against equity and good conscience. The Administration disagreed and notified Evo on July 3, 1989, that it would not waive recovery of the overpayment.
 
 
 8
 On August 28, 1989, Evo signed a refund agreement whereby $464.00 would be deducted from his Social Security benefits per month until the overpayment was refunded.[4] On November 15, 1989, Evo requested an administrative hearing to review the Administration's denial of a waiver and the deductions from his monthly benefits. Evo's request for a hearing was dismissed on January 10, 1991 because there had never been a reconsideration determination. On March 7, 1991, Evo requested that his case be scheduled for an administrative hearing or remanded for a reconsideration decision. A reconsideration determination was issued on March 26, 1991, declining a waiver on the ground that Evo was not without fault in causing the overpayment.
 
 
 9
 Evo died on November 15, 1991, but his widow, Ursula Evo, continued his appeal. An administrative hearing was held on January 31, 1992, and on March 13, 1992, the administrative law judge declined to waive recovery of the overpayment. The administrative law judge found that Evo was without fault in causing the overpayment, but decided that recovery would not be against equity and good conscience. Ursula Evo appealed to the Appeals Council, which remanded the case for additional administrative proceedings on January 13, 1993.
 
 
 10
 A second administrative hearing was held on October 5, 1993, and on February 17, 1994, the administrative law judge to whom the case had been assigned on remand issued a decision that recovery should not be waived because Evo was not without fault in causing the overpayment. The Appeals Council denied Ursula Evo's subsequent request for review, and the decision became the final decision of the Commissioner.
 
 
 11
 Ursula Evo next sought judicial review. On April 25, 1995, a U.S. Magistrate recommended that the district court affirm the Commissioner's final decision on the ground that substantial evidence supported the administrative law judge's decision that Evo was not without fault in causing and accepting the overpayment. The district court granted the Commissioner's motion for summary judgment on June 15, 1995. This timely appeal followed.
 
 II.
 
 12
 At the outset, we note briefly that a motion for summary judgment is a proper means for a district court to review a decision of the Commissioner. Pliley v. Sullivan, 892 F.2d 35, 37 (6th Cir.1989). Title 42 U.S.C. § 405(g) provides that a district court has the "power to enter, upon the pleadings and transcript of the record, a judgment ... with or without remanding the cause for a rehearing." Id. A district court's review of the evidence "is strictly limited to whether there is substantial evidence in the record to support the [Commissioner's] decision. Therefore, while the Act does not explicitly provide a summary judgment procedure, such a procedure is consistent with the limited scope of judicial review by the district court in Social Security cases." Id. We turn now to the merits of Ursula Evo's appeal.
 
 
 13
 Ursula Evo's first argument is that the administrative law judge who was assigned to this case after its remand from the Appeals Council in January of 1993 exceeded the Council's mandate in reaching his decision. The first administrative law judge concluded that William Evo was without fault with regard to the alleged overpayment of benefits, but that the recoupment could stand because it did not defeat the purposes of Title II of the Social Security Act, and was not against equity and good conscience. The Appeals Council subsequently vacated the administrative law judge's decision and remanded the case for further factual proceedings and a new decision. The Appeals Council did so on the ground that the first administrative law judge provided no rationale for his conclusion that William Evo was without fault in causing the overpayment of benefits. The Appeals Council instructed that, on remand and pursuant to 20 C.F.R. § 404.953, the administrative law judge should "obtain whatever evidence he deems necessary to decide the issues in this case and, when the record is complete, issue a new decision in which he sets forth his findings and conclusions and articulates how those findings and conclusions are supported by the record." (J.A. at 191).
 
 
 14
 The administrative law judge to whom the case was assigned on remand determined that William Evo was not without fault with in causing the alleged overpayment. On appeal, Ursula Evo claims that this finding is contrary to the directive of the Appeals Council, and that the administrative law judge's noncompliance with the Appeals Council's order was erroneous and deprived her of her due process rights. Ursula Evo contends that "it is clearly implied that the Appeals Council agreed with [the first administrative law judge's] decision that Mr. Evo was without fault. When the Appeals Council vacated [the] decision, it did so with this clear directive, which [the second administrative law judge] should have followed, but did not." Appellant's Brief at 10. This argument is without merit.[5]
 
 
 15
 In its order of remand, the Appeals Council made no implications either way regarding the issue of Evo's fault with regard to the overpayment of benefits. The Council simply vacated the decision of the first administrative law judge and ordered that a new decision issue based on clearly articulated findings and conclusions supported by the record. The second administrative law judge, therefore, was not bound to the first administrative law judge's determination that Evo was without fault. Instead, he was simply instructed to issue a new opinion, clearly articulating the rationale for whatever findings he made. The second administrative law judge provided factual support, albeit in a rather abbreviated manner, grounded in the record for his conclusion that Evo was not without fault. He thus satisfied the remand order of the Appeals Council and rendered a final administrative decision of the Commissioner, subject to judicial review. 20 C.F.R. § 404.955.
 
 
 16
 Ursula Evo's next two arguments on appeal are that recoupment of the overpayment of benefits was improper because Evo was without fault with regard to the overpayment, and the recoupment was against equity and good conscience because it caused great financial hardship to the Evo family.
 
 
 17
 The Social Security Act authorizes the Commissioner to recoup overpaid benefits. 42 U.S.C. § 404(a). The Act also provides, however, that recovery of an overpayment of benefits is to be waived where (1) the beneficiary is "without fault" and (2) recovery would either defeat the purpose of Title II of the Social Security Act or would be against equity and good conscience. 42 U.S.C. § 404(b).
 
 
 18
 The threshold issue in determining whether recovery of an overpayment of benefits should be waived is the beneficiary's "fault." Watson v. Sullivan, 940 F.2d 168, 171 (6th Cir.1991). We review the Commissioner's decision on the "fault" issue to determine whether it is supported by substantial evidence on the record. Id. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." Pliley, 892 F.2d at 38 (citation omitted).
 
 
 19
 Title 20 C.F.R. § 404.507 explains what constitutes fault as follows:
 
 
 20
 What constitutes fault ... on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
 
 
 21
 (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
 
 
 22
 (b) Failure to furnish information which he knew or should have known to be material; or
 
 
 23
 (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.
 
 
 24
 The second administrative law judge concluded that William Evo was not without fault because he "failed for at least 18 months to furnish information which he knew, or should have known to be material." (J.A. at 15). Substantial evidence in the record supports this finding. First, William Evo did not report his return to work promptly. Second, Evo failed to respond to repeated requests for information about his work activity for approximately eighteen months. Third, although Evo was informed by the Administration that a trial work period lasts no more than nine months, and indicated that he understood that fact in his September 1986 letter, he continued to accept disability benefits checks after that period had elapsed.
 
 
 25
 The administrative law judge also concluded that Evo was not without fault with regard to the overpayment because he "knew the ongoing payments may have been incorrect." (J.A. at 15). Substantial evidence on the record supports this conclusion as well. The Administration informed Evo that his period of disability had terminated in April of 1987, and that he should have stopped receiving checks in June of 1987. Despite this notice, Evo continued to accept checks received between May and October of 1988. Moreover, Ursula Evo testified that her husband did not believe he was entitled to disability checks while he was working.[6]
 
 
 26
 Ursula Evo seeks to avoid the result of these findings by arguing that her husband accepted the overpayments based upon erroneous information he received from an official administrative source. Ursula Evo presents no evidence, however, to indicate that her husband may have relied justifiably upon such information, and instead argues that the Evos should not be penalized because of a mistake made by the Administration. This argument is contrary to settled law. The fact that the disability payments would have stopped earlier if it were not for an administrative error does not change the outcome of this case. Such a "bureaucratic lapse ... will benefit a claimant only if he is totally blameless." Watson, 940 F.2d at 172.
 
 
 27
 The claimant bears the burden of establishing that he or she is without fault before the Commissioner proceeds to consider the "second tier of the waiver statute." Id. at 171 (quoting Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir.1982)). Because Ursula Evo is unable to show that her husband was without fault in causing the overpayment of benefits, it is unnecessary to consider whether recoupment defeated the purposes of Title II of the Social Security Act or was against equity and good conscience.
 
 
 28
 We sympathize with the Evos and do not intend to punish them by allowing the recoupment to stand. However, although we do not believe William Evo intended to cheat the system, we do conclude "that he had reason to know he was getting a windfall," and therefore was required "to make the public fisc whole." See Watson, 940 F.2d at 172.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Evo was informed that he could submit evidence for a review of this determination within ten days, but he did not do so
 
 
 [2]
 William Evo's minor daughter, Allison Evo, had been receiving benefits as a payee of William Evo
 
 
 [3]
 The benefits were reinstated effective January of 1989
 
 
 [4]
 The overpayment was recovered from Evo during his lifetime. On appeal, Evo's widow argues that the overpayment should not have been recovered because her husband was not at fault in causing the overpayment, and the recovery posed a hardship on the Evo family. She seeks to have the $16,712.30 recoupment reimbursed to Evo's estate
 
 
 [5]
 Ursula Evo also claims that statements made by the second administrative law judge during the hearing before him contradicted his subsequent finding that Evo was not without fault with regard to the alleged overpayment. The administrative law judge stated to Ursula Evo:
 I suggest to you, ma'am, that this was just a mistake. Human beings involved in large enterprise dealing with other human beings. We're not automatons. Human--the nature of being human is sometimes you make a mistake. You don't derive from that some sort of criminal intent or intent to defraud. This is clearly not the case, and if you ever had that idea, and if nobody's ever dispelled that idea up to now, let me do so without any equivocation whatsoever. There is no suggestion here that Mr. Evo did anything wrong intentionally to extract the money from the Government.
 (J.A. at 78). Ursula Evo contends that this statement shows that the administrative law judge "clearly told [her] on the record that Mr. Evo was without fault with regard to this alleged overpayment, just as was determined previously by [the first administrative law judge]." Appellant's Brief at 12. This argument is without merit. There is a difference between commenting that criminal intent appears to be lacking and concluding that a claimant is entirely blameless. Our review of the record as a whole leads us to believe that the administrative law judge was simply stating that he discerned no criminal intent on the part of William Evo.
 
 
 [6]
 During the second administrative hearing, Ursula Evo testified that "they kept telling [William Evo] that the checks belonged to him, and he, you know, he kept telling them that he was working and that he shouldn't be getting them, and they kept saying that they were his, that he was entitled to them, and they belonged to him." (J.A. at 69). Ursula Evo further testified that her husband "felt that if he was working, you know, that he shouldn't be getting the checks." (J.A. at 77)