**Jack SETIAN, Plaintiff**

v.

**John J. CALLAHAN, Commissioner of the Social Security Administration, Defendant** [1]

**Civil Action No. 96–30190–MAP.**

United States District Court,
D. Massachusetts.

July 15, 1997.

Alan D. Sisitsky, Springfield, MA, for Plaintiff.

Karen L. Goodwin, U.S. Attorney's Office, Springfield, MA, for Defendant.

PONSOR, District Judge.

Upon *de novo* review, and without opposition, this Report and Recommendation is hereby adopted. The plaintiff's motion is ALLOWED, in part, and the defendant's motion

---

1. John J. Callahan was appointed to serve as acting Commissioner of Social Security, effective March 1, 1997, succeeding Shirley S. Chater, who was originally the named Defendant. Pursuant to Fed.R.Civ.P. 25(d)(1), Commissioner Callahan has been substituted as defendant. By operation of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action need be taken to continue this suit.

is DENIED. Judgment will enter for plaintiff, and the matter is remanded.

So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (Docket No. 7) and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket No. 8)*

NEIMAN, United States Magistrate Judge.

## I.  INTRODUCTION

This matter is before the Court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), which provides for judicial review of a final decision by the Defendant Commissioner of the Social Security Administration ("Commissioner") regarding an individual's Social Security Disability Insurance ("SSDI") benefits. In his motion to reverse, Plaintiff Jack Setian ("Plaintiff") alleges that the Commissioner's decision that he be required to refund $41,907.60 in overpaid SSDI benefits is not supported by substantial evidence. Specifically, Plaintiff is seeking to be found without fault regarding the overpayment. In addition, Plaintiff seeks a finding that recoupment of the overpayment would defeat the purposes of the Act. The Commissioner, in turn, has moved for an order affirming the decision to recoup.

The parties' motions have been referred to the Court for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). As more specifically explained below, the Court recommends that the case be remanded for further proceedings.

## II.  STANDARDS

In overpayment cases such as this, the Commissioner is directed to either "decrease any payment ... to which such overpaid person is entitled, or ... require such overpaid person or his estate to refund the amount in excess of the correct amount." 42 U.S.C. § 404(a)(1)(A).   However, "[i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *See* 42 U.S.C. §§ 405(g).  The Supreme Court has defined substantial evidence as "more than a mere scintilla."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quotations omitted).  Thus, even if the record could support multiple conclusions, a court must uphold the decision " 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [his] conclusion.' "  *Ortiz v. Secretary of Health & Human Services,* 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218, 222 (1st Cir.1981)); *see also Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427.  Stated another way, a court must affirm the decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result. *Rodriguez Pagan v. Secretary of Health & Human Services,* 819 F.2d 1, 3 (1st Cir.1987).

## III.  HISTORY

Plaintiff was born on May 20, 1944, with arthrogryposis, a congenital condition affecting the joints.  (Administrative Record ("A.R.") at 73–74.)  Plaintiff's mother applied for SSDI on behalf of Plaintiff on April 5, 1962.  (A.R. at 107.)  Plaintiff began receiving SSDI in June 1962 (A.R. at 73–74), and subsequently filed an application to become his own payee on June 11, 1962 (A.R. at 107).

Plaintiff began work as an assembler at Universal Tool Company in February or March of 1965, when he was nearly twenty-one, and so notified the Social Security Administration ("Administration").  (A.R. at 107.)  The Administration terminated Plaintiff's benefits in January of 1966 at the conclusion of a nine-month transitional work pe-

riod and a two-month grace period. (A.R. at 75–76.) *See* 42 U.S.C. § 402(d)(1)(G)(i). Upon appeal, however, the Administration reinstated Plaintiff's benefits, having concluded that Plaintiff's salary was not substantial gainful activity. In essence, the Administration found that the majority of Plaintiff's wages were not "earnings" but, in effect, subsidies from his employer for his disability. (A.R. at 77–78.) [2]

In 1970 or 1971, Plaintiff changed jobs and commenced work at the Springfield Foundry (A.R. at 79), but was apparently fired in early 1977. In December of 1977, Plaintiff began working for the City of Springfield's Department of Public Works ("Springfield DPW"), but only notified the Administration of this employment in September of 1987 when he filed a work activity report. (A.R. at 79–82.) The Springfield DPW then provided the Administration with additional information regarding Plaintiff's employment, indicating that Plaintiff was employed under a federally funded program for the handicapped. (A.R. at 83–84.)

On February 18, 1988, the Administration notified Plaintiff that he had demonstrated the ability to perform substantial gainful activity since March of 1971, and that his SSDI benefits would therefore cease. (A.R. at 85–86.) Several months later, on August 19, 1988, the Administration notified Plaintiff of a $41,907.60 overpayment of benefits accrued from April of 1971 through June of 1988. (A.R. at 89–90.) Plaintiff did not initially dispute the overpayment, and the Administration began recoupment proceedings.

On January 10, 1990, Plaintiff requested a waiver of the recoupment, (A.R. at 91–105), a request that was denied initially and upon reconsideration. The Administration found that Plaintiff did not report his change in work status in 1970 and was not without fault in causing the overpayment. (A.R. at 106–08, 110–12; *see also* A.R. at 113–16.) Plaintiff then sought review by an Administrative Law Judge ("ALJ"). (A.R. at 117–18.)

On October 25, 1991, a hearing was held before ALJ James Stapleton. (A.R. at 165–69.) Unlike the initial and reconsidered determinations of the Administration, ALJ Stapleton found that the Plaintiff was without fault in causing the overpayment. ALJ Stapleton nonetheless held that recovery of the funds would neither be against equity and good conscience nor defeat the purposes of the Act and determined that Plaintiff had more than enough income to meet his ordinary and necessary living expenses. (A.R. at 165–69.) On March 5, 1992, Plaintiff requested the Administration's Appeals Council to review the ALJ's decision, which request was denied. (A.R. at 170–74.) Petitioner then commenced an action in federal court.

On February 16, 1993, upon agreement of the parties, District Court Judge Frank H. Freedman vacated ALJ Stapleton's decision due to a missing tape recording of the October 25, 1991 hearing. (A.R. at 175–76.) The case wound its way back to ALJ Stapleton, who was instructed by the Appeals Council to engage in a *de novo* hearing. (A.R. at 177.) On September 7, 1993, after a hearing, ALJ Stapleton again found that Plaintiff was without fault for the overpayment, but that recoupment would neither be against equity and good conscience nor defeat the purposes of the Act. (A.R. at 181–86.)

Plaintiff appealed ALJ Stapleton's second decision to the Appeals Council on November 12, 1993. (A.R. at 187.) The Appeals Council vacated the decision and again remanded the case, this time because the second hearing, despite the original remand instructions, was not *de novo*—a fresh inquiry had not been made into the issue of fault. The Appeals Court also found that ALJ Stapleton

---

**2.** An individual is entitled to SSDI if, among other factors, he is under a disability. The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). In determining whether an individual has engaged in substantial gainful activity, the Administration will not consider any income not directly related to his productivity, excluding as well, if the individual's earnings are being subsidized, the amount of the subsidy. "Thus, where work is done under special conditions, [the Administration will] only consider the part of [the] pay which [the individual] actually *earn[s]*." 20 C.F.R. § 404.1574(a)(2) (emphasis in original).

had failed to apply the correct regulation to determine fault. (A.R. at 193–94.)

On November 27, 1995, a third hearing was held; this time ALJ Richard Greenberg presided. (A.R. 9–1 3.) Unlike ALJ Stapleton, ALJ Greenberg found that Plaintiff was not without fault because he had failed to furnish information to the Administration which he should have known to be material. (A.R. 9–13.) As a result, ALJ Greenberg made no finding as to whether recovery from Plaintiff would be against equity and good conscience or defeat the purpose of the Act. (A.R.9–13.) He simply required recoupment. It is ALJ Greenberg's decision, as subsequently affirmed by the Appeals Council, that is at issue here.

## IV. DISCUSSION

The Commissioner argues that ALJ Greenberg's finding that the Plaintiff failed to demonstrate that he was entitled to a waiver of recoupment is supported by substantial evidence in the record and should be affirmed. On the other hand, Plaintiff claims that ALJ Greenberg failed to base his decision—as to whether Plaintiff was without fault—on substantial evidence. In addition, as mentioned, Plaintiff seeks a finding that recoupment of the overpayment would not defeat the purpose of the Act.

### A. Fault

In order to be entitled to a waiver by the Administration, a recipient must first establish that he or she was without fault in causing the overpayment. *Watson v. Sullivan,* 940 F.2d 168, 171 (6th Cir.1991); *Anderson v. Sullivan,* 914 F.2d 1121 (9th Cir.1990); *Viehman v. Schweiker,* 679 F.2d 223, 227 (11th Cir.1982); *Van Buskirk v. Shalala,* 842 F.Supp. 1477, 1478 (D.Mass. 1994). What constitutes "fault" on the part of a recipient depends upon whether the facts show that the incorrect payment resulted from (a) an incorrect statement made by the recipient which he knew or should have known to be incorrect; (b) the failure to furnish information which the recipient knew or should have known to be material; or (c) the acceptance of a payment which the recipient either knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507. As is evident, the regulations assume that situations may arise in which improper payments are received and retained, yet the recipient is not at fault. "Accordingly, it is clear that recipients are not always to be deemed to have knowledge of the law or to be charged with [fault] for failure to know it." *Russell v. Heckler,* 814 F.2d 148, 154 (3d Cir.1987) (citations and internal quotations marks omitted), *vacated on other grounds,* 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). "Rather, all the surrounding circumstances must be taken into account before a finding of [fault] can properly be made." *Cucuzzella v. Weinberger,* 395 F.Supp. 1288, 1295 (D.Del.1975). *See also Peeler v. Heckler,* 781 F.2d 649, 653–54 (8th Cir.1986) ("Beneficiaries are not presumed to know of each new arcanum of social security law.").

In the case at bar, the Commissioner asserts, as ALJ Greenberg found, that Plaintiff failed to furnish information that he should have known was material. Specifically, the Commissioner contends that Plaintiff neglected to notify the Administration of a change in his work status when he commenced work at both the Springfield Foundry and the Springfield DPW. This, the Commissioner claims, constitutes fault. In essence, the Commissioner argues that Plaintiff knew enough to notify the Administration when he first started working at Universal Tool Company in 1965. This conclusion was set forth by ALJ Greenberg as follows:

> It is reasonable to expect that the claimant was aware of the importance of reporting any change in employers as well as wages, since he had argued himself that the work he was performing at Universal Tool Company was not reflective of the actual services he provided, but subsidized by that particular employer. The undersigned finds that the claimant should have known that a change in employer and/or wages was material to his receipt of benefits and must be reported to the Administration.

(A.R. at 10–11.) In the Court's view, there are significant flaws in this analysis.

There is apparently no dispute that Plaintiff received information in 1965 informing him of his need to notify the Administration of his employment. However, comparing what occurred in 1965 with his reporting duties in 1970 or 1977 is disingenuous, particularly when one considers the Administration's decision in 1966. As described, the Administration determined at the time, after an appeal by Plaintiff, that Plaintiff should continue to receive SSDI benefits even though he was receiving wages in excess of the substantial gainful activity threshold.[3] The Administration decided that, because of his disability, Plaintiff only *earned* twenty-five percent of his salary and that the remaining seventy-five percent was a *subsidy*. *See also n. 2 supra.* Specifically, the Administration determined that Plaintiff was only able to work at twenty-five percent efficiency as compared to other workers, deeming seventy-five percent of his wages a subsidy from his employer. As a result, Plaintiff's work, although full-time, was not considered substantial gainful activity. (A.R. at 77–78.)

Plaintiff thereafter relied on this determination and assumed, albeit possibly incorrectly, that—because he continued to suffer from arthrogryposis—the percentage calculation would follow. In fact, until 1987, Plaintiff had no further contact with the Administration after it made the assessment that Plaintiff only earned twenty-five percent of his wages. Until he filed a work activity report in 1987—apparently in response to an Administration inquiry—Plaintiff assumed that, as long as twenty-five percent of his wages was less than the threshold for substantial

gainful activity, his SSDI benefits would continue unabated.

Given the Administration's ruling in 1966, this appears to be a reasonable assumption on Plaintiff's part. The assumption is particularly reasonable when one considers in addition that Plaintiff was later hired by the Springfield DPW under a federally funded program to create jobs for handicapped persons and that his job assignments were under "special conditions," i.e., specially selected to match his physical limitations and abilities. *See* 20 C.F.R. § 404.1574(a)(2). All of this goes unaddressed and, therefore, unexplained in ALJ Greenberg's decision.

Nonetheless, the Commissioner argues that Plaintiff was competent enough to understand his obligations to report changes in his work status. In addition, the Commissioner asserts, Plaintiff must have been aware of his obligations because, pursuant to Administration regulations, he "would have received periodic reminders of his responsibility to report changes in his working status." (Commissioner's Memo. at 8 (citing 20 C.F.R. § 422.135).) "There is no reason to believe," the Commissioner continues, "that normal procedures were not followed in this case." (*Id.*) There are, however, no documents of record to support this assertion. Thus, even assuming Plaintiff's competence—a matter he does not contest—there remains Plaintiff's contention that he was not contacted by the Administration about his obligations and that, if he was contacted, he interpreted those contacts in light of the Administration's 1966 ruling in his favor.[4]

---

**3.** The applicable regulations currently provide as follows:

> We will consider that your earnings from your work activities as an employee show that you have engaged in substantial gainful activity if (1) Your earnings averaged more than $200 a month in calendar years prior to 1976; (ii) Your earnings averaged more than $230 a month in calendar year 1976; (iii) Your earnings averaged more than $240 a month in calendar year 1977; (iv) Your earnings averaged more than $260 a month in calendar year 1978; (v) Your earnings averaged more than $280 a month in calendar year 1979; (vi) Your earnings averaged more than $300 a month in calendar years after 1979 and before 1990.

20 C.F.R. § 404.1574(b)(2).

**4.** In addition, even had Plaintiff received information in 1970 or 1977 from the Administration regarding his duty to notify, the information would have required Plaintiff to notify the Administration only if there were a change in his "work status." (*See, e.g.,* A.R. at 107, 111, 115.) Unlike in 1965, when Plaintiff clearly changed his work status (from nonworking to working), it is unclear whether Plaintiff would have actually changed his "status" in 1970 and 1977, when he really only changed his employer. There appears to be no dispute that Plaintiff worked in a "similar position" to that of Universal Tool Company at both the Springfield Foundry and the Springfield DPW. (*See* Pl. Mem.)

■ Ordinarily, the resolution of conflicts in evidence and the determination of credibility are for the administrative decision-maker, not for the courts. See *Evangelista v. Secretary of Health & Human Services*, 826 F.2d 136, 141 (1st Cir.1987); *Rodriguez*, 647 F.2d at 222. Where, however, "credibility is a critical factor in determining whether the claimant was without fault, the ALJ must have stated explicitly whether he believed the witness's testimony." *Valente v. Secretary of Health & Human Services*, 733 F.2d 1037, 1045 (2nd Cir.1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981)). Here, there is nothing in ALJ Greenberg's opinion indicating that his resolution of the fault issue was based on a credibility determination. In sum, considering the whole record, the Commissioner's finding that Plaintiff was not without fault is not supported by substantial evidence.[5]

### B. Would Recoupment of the Overpayment Defeat the Purposes of Title II of the Act or Be Against Equity and Good Conscience

Both parties also address the second prong of the recoupment issue—whether recovery of the overpayment would (a) defeat the purpose of the Act or (b) be against equity and good conscience—although, as noted by the Commissioner, Plaintiff has failed to address the equity and good conscience component in his written argument to the Court. This second prong inquiry is made once a claimant is found to be without fault in causing an overpayment. As indicated, ALJ Stapleton—after determining that Plaintiff was without fault—twice found that recoupment was appropriate. Nonetheless, the Court declines to undertake a formal review of ALJ Stapleton's findings.

As the tortured procedural history of this action makes clear, the only administrative decision before the Court is that of ALJ Greenberg. Both of ALJ Stapleton's decisions were vacated by the Appeals Council. When the Appeals Council vacated and remanded ALJ Stapleton's second decision, it explicitly directed that a different ALJ—this time ALJ Greenberg—again determine whether Petitioner was without fault in causing and accepting the overpayment. The remand order implicitly acknowledged that the ALJ need not address the second prong of the analysis should he find, as he did, that Plaintiff was not without fault. (A.R. at 193–94). As a result, there is nothing before the Court other than ALJ Greenberg's finding of fault. Accordingly, the Court cannot revive *sua sponte* ALJ Stapleton's decision to recoup although on cursory analysis it appears to have been based on substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's motion to reverse be ALLOWED with respect to the finding of fault, but otherwise DENIED; that the Commissioner's motion to affirm be DENIED; and that the matter be REMANDED for further proceedings consistent with this opinion. Specifically, the Court would order the Commissioner on remand to determine whether the recoupment of the overpayment would defeat the purpose of the Act or be against equity and good conscience.[6]

June 24, 1997.

---

5.  The Court reaches this conclusion without considering Plaintiff's assertion that the Administration—in conjunction with the Internal Revenue Service—could have discovered information regarding Plaintiff's employment by examining his federal income tax returns which always reported Plaintiff's income. This argument is speculative at best. Moreover, the Court notes that Plaintiff used his own Social Security number for his wages, but another, apparently that of his father upon whose wage record Plaintiff was originally found eligible, for SSDI.

6.  The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the

basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.