Alberto I. BANUELOS, Plaintiff–
Appellant,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.

No. 97–3058.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1998.

Decided Jan. 27, 1999.

Ashley S. Rose (argued), Glen Ellyn, IL, for Plaintiff–Appellant.

Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, Julie A. Flanagan (argued), Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before COFFEY, FLAUM and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

In November of 1990, the plaintiff-appellant, Alberto Banuelos ("Banuelos"), and his two children began receiving disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, for an injury he received as a result of his employment with American Asphalt in Darien, Illinois.

Between November of 1990 and June of 1993, Banuelos also received weekly workers' compensation payments which, according to statute, should have offset his disability benefits. In 1994, Banuelos received notification that he had received an overpayment of disability benefits from the Government amounting to $26,543. Banuelos petitioned the Social Security Administration ("SSA") that his responsibility for repaying the overpayment be waived. In a Special Determination Hearing, the SSA found that Banuelos was "without fault" in causing the overpayment, but ruled that the SSA's recovery of the overpayment would not defeat the purpose of the Social Security Act. The SSA denied Banuelos's request, and the administrative law judge affirmed the SSA's decision. On July 28, 1997, the United States District Court for the Northern District of Illinois found that substantial evidence supported the administrative law judge's decision that Banuelos was not entitled to a waiver of his responsibility to repay his overpayment. Banuelos appeals, arguing that the SSA, acting for the defendant-appellee, Commissioner of Social Security Kenneth Apfel ("Commissioner"), erred in finding that recoupment of the overpayment by the SSA would not defeat the purpose of Title II of the Social Security Act and would not be against equity and good conscience. We affirm.

## I. BACKGROUND

On March 22, 1990, Banuelos applied for disability insurance benefits under Title II of the Social Security Act for two herniated disks he sustained while working for American Asphalt in Darien, Illinois, in 1989. In his application for disability benefits, Banuelos notified the SSA of his intent to seek workers' compensation benefits in addition to his disability benefits. In November of 1990, Banuelos began receiving weekly workers' compensation benefits of $475.33 and notified the SSA of the receipt of these disability benefits. Also in November of 1990, the SSA notified Banuelos that he would begin receiving past monthly disability benefits of $1,267 and future monthly disability benefits of $650 and that under the Social Security Act, these amounts were computed and offset by the amount of workers' compensation benefits he

was receiving. At the same time, Banuelos's two minor children also began receiving disability and workers' compensation benefits for Banuelos's back injury, pursuant to the statute. While receiving the benefits, Banuelos periodically spoke with officials at the SSA who informed him that his receipt of disability benefits and workers' compensation benefits was "okay."

In December of 1993, Banuelos agreed to receive a lump sum settlement of $200,000 in lieu of future workers' compensation benefits for his back injury. At the same time, Banuelos sold a condominium in Illinois that he and his children had been living in for a $12,000 profit and moved into a rented apartment. Of this $212,000 in workers' compensation benefits and profits from the condominium sale, Banuelos invested approximately $98,000 in a house in Guadalajara, Mexico, for his parents and sister to live in rent-free; loaned $9,500 to family and friends; invested $12,000 in a first car and $2,600 in a second car; paid off approximately $10,000 in credit card debt; deposited $19,000 in a three-month certificate of deposit, and placed the remainder in bank accounts to be spent on living expenses for Banuelos and his two children.

In early 1994, the SSA determined that, contrary to policy, it had not offset the disability benefits of Banuelos and his children by the sum of their workers' compensation benefits, resulting in a total overpayment of $39,799. The SSA contacted Banuelos in an effort to recoup the overpayment. The SSA suspended payment of all monthly disability benefits to Banuelos and his children until the year 2000. Banuelos requested a waiver of responsibility for repayment of the overpayment he and his children had received, arguing that the error was not his fault and that recoupment by the SSA would defeat the purpose of Title II because he could not meet his family's necessary living expenses if he and his children were required to return the overpayment.

In a Special Determination Hearing at the SSA, Banuelos testified that his living expenses were approximately $1,300 per month and that his assets consisted of approximate-

ly $16,000 in liquid assets (amounting to cash in savings and checking accounts as well as a $3,000 certificate of deposit) and the house in Guadalajara. The SSA, in agreeing that Banuelos was not at fault for the overpayment, waived recovery of the overpayment from his children, but refused to waive recoupment of the balance of the overpayment (a total of $26,543), finding that recovery of this amount would not deprive Banuelos of funds needed for necessary living expenses. On appeal, Administrative Law Judge ("ALJ") Irving Stillerman affirmed the SSA's decision and ruled that Banuelos was not entitled to waiver of his overpayment because he failed to establish that recovery would defeat the purpose of the Social Security Act or be against equity and good conscience. The Appeals Council of the SSA denied Banuelos's request for a review of the ALJ's decision and thereafter, Banuelos filed suit against the Commissioner of Social Security in the United States District Court for the Northern District of Illinois, requesting that the SSA's decision not to waive repayment of its overpayment be reversed. On July 28, 1997, Judge Ann Claire Williams ruled that substantial evidence supported the ALJ's decision that Banuelos was not entitled to waiver of his responsibility to repay the $26,543 overpayment. *See Banuelos v. Chater*, 974 F.Supp. 652 (N.D.Ill.1997).

## II. ISSUES

On appeal, Banuelos contends that: (1) there is insubstantial evidence in the record to determine the amount of overpayment he received; (2) recovery of the overpayment would defeat the purpose of Title II of the Social Security Act because the purpose of the Act is to provide the recipient income for ordinary and necessary living expenses and Banuelos needs all of his current income for such expenses; (3) repayment of the overpayment would be against equity and good conscience; and (4) he should be deemed a prevailing party and thus be awarded attorney's fees under 28 U.S.C. § 2412.

## III. DISCUSSION

■ With respect to all four issues under consideration, in reviewing decisions of the SSA, this Court applies the same standard of review as did the district court. *See Ehrhart v. Secretary of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir.1992). Specifically, if supported by substantial evidence, the SSA's decision is considered conclusive. 42 U.S.C. § 405(g). A district or appellate court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the SSA." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995) (citation omitted). Nor may the court "merely rubber stamp" the SSA's decisions. *Ehrhart*, 969 F.2d at 538 (citation omitted).

■ Overpayment of disability benefits is addressed specifically in the Social Security Act. Section 404(b) of the Act provides that

*[i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.*

(emphasis added). While there is no statutory definition of the requirements of § 404(b), the Commissioner of Social Security has "full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions...." 42 U.S.C. § 405(a). The Commissioner has established that in order to "defeat the purpose of this subchapter," one must

defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses. This depends on whether the person has an income or financial resources sufficient for more than ordinary and necessary needs....

20 C.F.R. § 404.508(a). In addition, 20 C.F.R. § 404.509 provides that

(a) [r]ecovery of an overpayment is "against equity and good conscience" ... if an individual—

(1) Changed his or her position for the worse ... or relinquished a valuable right

... because of reliance upon a notice that a payment would be made or because of the overpayment itself....

(b) The individual's financial circumstances are not material to a finding of "against equity and good conscience."

Finally, the individual bears the burden of establishing that he has met the requirements of § 404(b) of the Social Security Act. *See Adams v. Secretary of Health and Human Servs.*, 653 F.Supp. 249, 250 (C.D.Ill. 1986).

## A. Sufficiency of the Evidence Supports SSA's Determination of the Amount of Overpayment

Banuelos initially contends that there is insufficient evidence in the record to determine the amount of the overpayment. In response, the Commissioner states that Banuelos has waived this argument by failing to raise it prior to his appeal.

■ It is well established that this Court will not consider issues that were not raised administratively. *See Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir.1997) (citing *Papendick v. Sullivan*, 969 F.2d 298, 302 (7th Cir.1992)). Furthermore, issues not raised before the district court are waived on appeal. *See Ehrhart*, 969 F.2d at 537 n. 4 (citations omitted). While Banuelos attempts to create an exception to this principle, he has failed to provide any statutory or common law basis for such an exception. Therefore, under *Ehrhart*, Banuelos waived his right to petition this Court for review of this issue by failing to raise it before the administrative or trial judges.

Furthermore, were we to accept that this issue had been timely raised, Banuelos's argument is nonetheless without merit. Banuelos states that the overpayment of $26,543 is inconsistent with the total overpayment cited by the ALJ of $39,799. As explained by the ALJ, both of Banuelos's children had been overpaid in the amount of $6,628, for a total of $13,256. As discussed above, the SSA waived repayment of the children's benefits as funds needed for necessary and ordinary living expenses under 20 C.F.R.

§ 404.508(a), and there is no remaining overpayment issue as to the children's benefits. Thus, although there was a total overpayment of $39,799, $13,256 of this amount was waived, resulting in a net remaining overpayment of $26,543, the amount the ALJ confirmed that Banuelos needed to repay. To the extent that Banuelos cites overpayment figures of $9,856 for the children and $19,751 for himself, these figures were apparently initial notification figures from February of 1994—Banuelos continued to receive benefits for several months and accordingly, these figures were adjusted in the final accounting.

## B. Recoupment Does Not Defeat the Purpose of Title II of the Act

■ Banuelos next contends that under the terms of section 404(b) of the Social Security Act, the SSA's recoupment of the overpayment would "defeat the purpose" of Title II of the Act. While it is undisputed that Banuelos was not at fault in causing the overpayment of disability benefits, in order to be granted a waiver of responsibility for an overpayment, under section 404(b) of the Social Security Act, Banuelos must also prove that recoupment would defeat the purpose of Title II. Banuelos specifically argues that recoupment would defeat the purpose of Title II because his monthly living expense of $1,602.45 exceeds his monthly income of $1,028.[1] According to Banuelos, "[t]he purpose of Title II is to provide the recipient of disability insurance benefits income for ordinary and necessary living expenses including, without limitation, fixed living expenses, medical expenses, support of others, and reasonable miscellaneous expenses." "The purpose of Title II would be defeated if the recipient needs substantially all of his or her current income for such ordinary and necessary expenses." The Commissioner responds to Banuelos's contention on this point by claiming that the ALJ reasonably found that recovery of the overpayment would not defeat the purpose of the Social Security Act because Banuelos's total financial resources amounted to $116,000, which would allow him to retain sufficient resources to meet living

---

1. Although Banuelos refers to a monthly expense figure of $1,602.45, recall that Banuelos's testimony established that his monthly expenses for himself and his children totaled only $1,300.

expenses for approximately six years after repayment.

 Banuelos fails to recognize that 20 C.F.R. § 404.508(a) requires that "income *or financial resources*" be considered in the determination of whether a compelled recoupment "defeats the purpose" of the Social Security Act. "Financial resources" include, among other things, an individual's savings, interest income, and equity in real estate. *See Milton v. Harris,* 616 F.2d 968, 974 (7th Cir.1980). Both the SSA and the ALJ in this case found Banuelos's assets to total approximately $116,000, including loans to family and friends, two cars, a certificate of deposit,[2] cash in several bank accounts, and equity in his house in Guadalajara. While the SSA found that these assets did not generate income used by Banuelos for living expenses, the assets had liquidation value that could be recognized in order to provide repayment to the SSA. Although Banuelos argues on appeal that the value of his house in Guadalajara had incurred a loss of "75% to 80% of its value" and that his other assets consist of savings which have been depleted through the payment of ordinary living expenses, Banuelos has failed to offer any substantive evidence to the SSA, the ALJ, the district court, or this Court, beyond bald assertions, that his house in Guadalajara lost significant value. Thus, we are of the opinion that the ALJ's determination that Banuelos had sufficient assets at the time of the administrative hearing to repay the $26,543 overpayment is supported by substantial evidence.

## C. Recoupment is Not Against Equity and Good Conscience

 Banuelos next asserts that recoupment of the overpayment would be against equity and good conscience, in violation of the Social Security Act, because the purchase of the property in Guadalajara and its subsequent loss in value is *ipso facto* evidence that he changed position in reliance on the overpayment. On the contrary, the Commissioner argues that Banuelos did not suffer a loss

due to his reliance on the overpayment; Banuelos merely invested the cash proceeds from the overpayment in real estate and liquid assets.

 According to the Code of Federal Regulations, 20 C.F.R. § 404.509(a)(1), the "recovery of an overpayment [by the Commissioner] is 'against equity and good conscience' if an individual ... relinquished a valuable right ... because of reliance upon a notice that a payment would be made or because of the overpayment itself ...." *See also* 20 C.F.R. § 404.509 ex. 2 (resignation from employment and resulting inability to secure alternative employment is relinquishment of a valuable right). Similarly, recoupment of an overpayment would be against equity and good conscience if an individual "[c]hanged his or her position for the worse" because of reliance on the overpayment. 20 C.F.R. § 404.509(a)(1). *See also* 20 C.F.R. § 404.509 ex. 1 (widow's decision to enroll daughter in private school in reliance on an overpayment of disability benefits put the widow in a worse position than if the overpayment was never received; recoupment would be against equity and good conscience). An agency's construction of a statute through its promulgated regulations is reviewed under a "permissible construction" standard and should not be disturbed "if it reflects a plausible construction of the plain language and does not otherwise conflict with Congress' expressed intent." *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991). Therefore, the Commissioner's regulations limiting the definition of what is considered "against equity and good conscience" to circumstances where an individual relinquished a valuable right or changed his position for the worse are entitled to "legislative effect." *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).

This Court has repeatedly held that equity and good conscience do not bar the recovery of overpayment of disability benefits from an individual who has failed to show a change in

**2.** Banuelos testified at the administrative hearing that the $19,000 three-month certificate of deposit he had purchased in 1993 with the proceeds of the lump sum settlement expired and

that he had purchased a $3,000 certificate of deposit, which designated his eldest child as beneficiary, and placed the balance in savings accounts to be used for ordinary living expenses.

position for the worse or the relinquishment of a valuable right. In *Benedict v. Dir., Office of Workers' Compensation Programs*, 29 F.3d 1140, 1144 (7th Cir.1994), the plaintiff coal worker erroneously received workers' compensation benefits for black lung disease and was required to repay a $19,079 overpayment because, although he was not at fault in causing the overpayment, it was not contrary to good conscience and equity for the Government to recover the excess. We held that in order for recoupment of an overpayment of workers' compensation benefits to be against equity and good conscience, the recipient must have either " 'relinquished a valuable right' or 'changed his position for the worse.' " *Id.* at 1142 (quoting 20 C.F.R. § 410.561(d)). Similarly, this Court has applied the same definition of what amounts to "against equity and good conscience" in the context of disability benefits. *See Milton*, 616 F.2d at 974.

In the case under consideration, we do not agree with the plaintiff's contention that he relinquished a valuable right under *Milton*; rather, Banuelos simply changed the form of his assets by purchasing a house in Guadalajara with the proceeds of his cash settlement. Although Banuelos argues that buying a house should be considered a change of position, he provides no foundation for an argument that his position changed for the worse because of the disability overpayment. Furthermore, in making this revocable decision to invest cash assets in real estate, Banuelos decided to assume the risk of market fluctuations. Even if we accept as truth that Banuelos's house in Guadalajara was not a strong financial investment, the risk of this unfortunate event is one that Banuelos himself assumed.

Alternatively, relying on decisions from the Eighth and Ninth Circuits, Banuelos contends that this Court's definition of what is "against equity and good conscience" should be expanded so as to accommodate his specific circumstance. In the case of *Groseclose v. Bowen*, 809 F.2d 502 (8th Cir.1987), the Eight Circuit created an exception to the definition of what is "against equity and good conscience." In *Groseclose*, the Secretary of Health and Human Services withheld a retir-

ee's insurance benefits to recoup past overpayments of insurance benefits made to the retiree's daughter. *Id.* at 503. The court held that it was inequitable to require the retiree to repay overpayments made to the retiree's daughter when the daughter lived out of state, the retiree had no knowledge of the daughter's receipt of the overpayments, and the retiree had not made false statements concerning the daughter's payments. *Id.* at 506. Relying on *Groseclose*, the Ninth Circuit held that the interpretation of what could be considered "against equity and good conscience" was unreasonably narrow and did not allow for equitable considerations. *See Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir.1990) (recoupment of disability benefits erroneously paid to a prison inmate was against equity and good conscience when the recipient spent all the benefits on essential living expenses after he was released from prison and the recipient's only income was monthly welfare benefits).

This Court does not agree with Banuelos's assertion that his situation warrants an expansion of our long-standing definition of what is considered "against equity and good conscience." The decisions from the Eighth and Ninth Circuits in *Groseclose* and *Quinlivan* are distinguishable in that these decisions deal with very specific and fairly unusual fact situations. The *Groseclose* case dealt with an attempt by the SSA to recoup benefits from an individual who was not aware that overpayments were being made to a third party. In our case, Banuelos was the direct recipient of the overpayment.. In *Quinlivan*, the court held invalid the recoupment of a $4,601 overpayment to an individual who after twenty years' incarceration spent all his savings including the overpayment on living expenses. Banuelos, on the other hand, did not spend all of the overpayment on living expenses, but rather invested a sum approximately four times the size of the overpayment in real estate and liquid assets.

Furthermore, by expanding the definition of "against equity and good conscience" to include Banuelos's situation, the plaintiff would have us rendering the explicit language of 42 U.S.C. § 404(b) superfluous.

Specifically, Banuelos argues that he should not be required to reimburse the SSA for an overpayment that he was not at fault for causing. However, the statute requires *both* that the recipient be without fault *and* that the recoupment be "against equity and good conscience" in order for the recoupment to be waived. If both statutory requirements are not met, the recipient of an overpayment of disability benefits is required to reimburse the SSA for the overpayment, as was the case here.

Thus, at the time of Banuelos's administrative hearing, substantial evidence supported the SSA's conclusion that recoupment of the overpayment would not be against equity and good conscience.

### D. Banuelos is Not a Prevailing Party

■ Finally, Banuelos argues that because the SSA waived recoupment of the overpayment with respect to his children, Banuelos had in effect proven to the ALJ that the SSA did not have substantial justification for terminating the children's benefits and thus, the SSA should be ordered to pay attorney's fees to Banuelos as the "prevailing party." Specifically, 28 U.S.C. § 2412(d)(1)(A) provides that "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified ...." In response, the Commissioner claims that this issue is waived for purposes of appeal because it was not raised before the ALJ or trial court.

Our review of the record reveals that Banuelos did in fact fail to raise this issue administratively or in the district court, and we agree with the Commissioner that under *Brewer*, 103 F.3d at 1393, Banuelos waived his right to raise this issue on appeal. Furthermore, even if Banuelos's argument was accepted as timely presented, his reasoning is flawed. Although the SSA waived recoupment of the overpayments made to Banuelos's children, the children are not parties to the instant litigation. Despite Banuelos's attempt to list the children as plaintiff-appellants, they are not parties of interest and

Banuelos cannot be deemed a prevailing party in this unrelated action. Fed.R.Civ.P. 17(a).

### IV. CONCLUSION

In sum, substantial evidence exists in the record to support the SSA's determination that despite the fact that Banuelos is without fault in causing the overpayment of his disability benefits, recoupment of the overpayment by the SSA does not defeat the purpose of Title II of the Social Security Act and is not "against equity and good conscience." With regard to Banuelos's arguments that there was insufficient evidence in the record upon which a determination could be made as to the amount of overpayment and that he, as representative of his children, was entitled to attorney's fees as a prevailing party, he waived appellate review by failing to raise these issues at the administrative or district court level.

AFFIRMED.