# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4183

_____

Jim Coulston,                                        *
                                                     *
              Appellant,           *
                                                     *
                                                     *   Appeal from the United States
     v.                                         *   District Court for the Southern
                                                     *   District of Iowa.
Kenneth S. Apfel, Commissioner                       *
of Social Security,                                  *       [PUBLISHED]
                                                     *
              Appellee.            *

_____

Submitted:  June 16, 2000

Filed:   September 21, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

PER CURIAM.

     Occasionally, the Social Security Administration (the Administration) sends a benefit check to the wrong person.  When this occurs, the Administration is entitled to recover the money unless the recipient of the check was without fault and recovery would subvert the purpose of social security or be against equity and good conscience. See 42 U.S.C. § 404.

In this case, the Administration erroneously sent a $20,658 check to Jim Coulston, a man who receives benefits because of an intellectual impairment. Coulston, who has trouble reading, thought the check was a back payment for medical expenses because he canceled his Medicare, so he cashed the check and used most of the money to pay bills and purchase Christmas presents. We must now decide whether the Administration may recoup its money. We find it may not.

Coulston returned the unspent money to the Administration, but he did not have the resources to immediately repay the money already spent. The Administration threatened to withhold any further benefit checks from Coulston until it reclaimed the remainder ($18,249) of the money. Coulston then sought a waiver from repayment to the Administration, asserting he was without fault and that recovery would subvert the purpose of social security or be against equity and good conscience. He received a hearing before an Administrative Law Judge (ALJ), who found Coulston undeserving of a waiver. Coulston then brought his case to federal district court, which upheld the ALJ's determination. So, to decide this case, we must review the ALJ opinion and the record evidence.

After receiving the check, Coulston got, in the ALJ's words, "advice from and was assisted by" his ex-wife and a friend. Basically, this assistance was in cashing and spending the check. In determining whether Coulston was without fault, the ALJ relied substantially on the role Coulston's ex-wife and friend played. The ALJ noted that, while Coulston had an intellectual impairment, there was no evidence that either his ex-wife or friend suffered from a similar disability. This led the ALJ to conclude that, before cashing and spending the check, "at least one of the three individuals involved" should have made further inquiries with the Administration. The ALJ also noted that, in deciding the case, he considered that neither Coulston's ex-wife nor friend testified at the hearing to explain why they did not question Coulston's receipt of the check. Also important to the ALJ's conclusion was the ability of Coulston's ex-wife and friend to manage their own finances and dispense advice.

The thrust of much of the ALJ's opinion is that Coulston's ex-wife and friend knew or should have suspected what was going on. This may well be true, but it is irrelevant. The Administration's regulations state that a claimant is at fault if he knew or should have known the overpayment was incorrect. See 20 C.F.R. § 404.507. The Administration's regulations also state that the determination of fault is only made as to the overpaid individual or any other person from whom the Administration seeks to recover. See id. What that means in this case is that the ALJ should have considered what Coulston himself knew or should have known. Instead, the ALJ relied substantially on what Coulston's ex-wife and friend should have known; and while Coulston's ex-wife and friend very well may have known (or should have known) what was going on, it was erroneous to impute their actions and abilities to Coulston.

We also think the ALJ did not properly account for the intellectual impairments of Coulston. When determining whether an overpaid individual is without fault, the ALJ is required by statute to "specifically take into account" the individual's mental or educational limitations. See 42 U.S.C. § 404(b). To be fair, the ALJ noted most of Coulston's intellectual and educational limitations, including: his difficulty with reading and writing; his attendance of special education classes at school; and his eight months of training with Goodwill Industries to learn the skill of dishwashing. But, the ALJ then basically ignored how these limitations would have affected Coulston's ability to know the check was erroneous. Instead, as related above, the ALJ relied substantially on the lack of intellectual limitations of Coulston's "advisors"—his ex-wife and friend.

The ALJ also placed significant emphasis on the events surrounding Coulston's attempts to cash the check. The ALJ found Coulston was unable to cash the check at the first bank he tried—the obvious inference being that the bank refused to cash the check because of its substantial amount. This, according to the ALJ, should have been a tip-off to Coulston and to his friend that a problem existed with the check. But, the record reveals the bank refused to cash the check because of a problem with Coulston's identification, not because of the large amount of the check. And, again, while his

friend may have known the real situation, Coulston's intellectual limitations may well have prevented him from ascertaining the real situation.

The parties in this case make much of Coulston's supposed interaction or supposed non-interaction with the Administration in the month following his receipt of the erroneous check. After Coulston received the check, he received a notice from the Administration informing him he was entitled to the check and to a substantial increase in his monthly benefits. The Administration claims Coulston only received this notice after he became aware the check was an error. Coulston also claims he and his ex-wife made several phone calls to the Administration, and Administration employees said he was entitled to the $20,658. The Administration claims that, in every phone call, they informed Coulston he was not entitled to the money. But, the ALJ declined to credit either version of events, and so do we. The evidence on this issue is inconclusive, and, as an appellate court, we should not engage in fact-finding on this issue. See Duffie v. Deere & Co., 111 F.3d 70, 74 (8th Cir. 1997) (role of appellate court is to "review, rather than to make, findings of fact").

The Administration also calls to our attention Coulston's "history" of overpayments. Apparently, in the early 1980s, Coulston was overpaid by about $4,000. But, the ALJ made no mention of this history in his opinion, and we do not put much stock in it either, as we doubt most people, even those without an intellectual impairment, would remember an overpayment incident that occurred almost fifteen years earlier.

So, after a careful review of the record, the following evidence remains: Coulston has an intellectual impairment substantial enough to entitle him to social security benefits for the last twenty-plus years; he received a check with an overpayment; he believed the overpayment was for back medical payments because he had canceled his Medicare policy; he spent much of the check to pay off bills and buy Christmas presents until informed the check was a mistake; and he then paid back the remaining

money. Is this enough for Coulston to meet his burden of proving he is without fault? See Banuelos v. Apfel, 165 F.3d 1166, 1170 (7th Cir. 1999) (claimant has burden of proving entitlement to waiver of repayment), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562 (7th Cir. 1999); Watson v. Sullivan, 940 F.2d 168, 171 (6th Cir. 1991) (same); Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982) (same).

We think Coulston meets his burden; but barely. Generally, if the evidence is in equipoise, the party with the burden of proof loses. See Cigaran v. Heston, 159 F.3d 355, 357-58 (8th Cir. 1998). The evidence here is so close that it is almost in equipoise. But, Coulston testified he thought the overpayment was for back medical payments. The ALJ had the opportunity to discredit this testimony, and did not. So, Coulston's subjective thinking, coupled with the objective evidence of his intellectual impairment, leads us to conclude he has met his burden of proving he was without fault.

Our finding that Coulston was without fault does not automatically result in a victory for him. We must also determine whether repayment would defeat the purpose of providing social security to Coulston or would be against equity or good conscience. See 42 U.S.C. § 404(b).

Coulston is far from well-off. Coulston works on-and-off as a part-time dishwasher, and he receives about $650 a month in social security benefits. Thus, his annual income skirts the poverty line. See United States Census Bureau (visited Aug. 14, 2000) <www.census.gov/hhes/poverty/threshld/thresh99.html> (1999 poverty threshold is $8,667). Coulston also has no savings account, so he obviously lives from check to check. See Banuelos, 165 F.3d at 1170-71 (considering claimant's assets in determining whether repayment defeats purpose of social security). In light of these circumstances, we credit Coulston's statement at the hearing that he "has a hard time making ends meet," and, because of this, we think taking even a small amount of benefits away from Coulston would defeat the purpose of social security.

For the foregoing reasons, we reverse and remand to the district court with directions to enter judgment in favor of Coulston.  See Gladden v. Callahan, 139 F.3d 1219, 1223 (8th Cir. 1998).

BYE, Circuit Judge, concurring.

I join in the result reached by the majority, but I cannot join in the majority's reasoning.  I write separately to emphasize those points.  First, the majority ignores the standard of review that governs this case, and I believe that the standard ought to be explicated and applied.  Second, the majority makes its own estimate (though it should not) of Coulston's ability to repay the SSA.

I

Federal courts review many different kinds of decisions rendered by the Commissioner of Social Security.  In virtually every such case, courts' review is governed by the statutory "substantial evidence" test.  See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

We subject the Commissioner's decision to deny a claimant's request for a waiver of repayment in an overpayment of benefits case to the very same standard of review.  See Gladden v. Callahan, 139 F.3d 1219, 1220, 1222, 1223 (8th Cir. 1998); accord Watson v. Sullivan, 940 F.2d 168, 169, 171 (6th Cir. 1991); Viehman v. Schweiker, 679 F.2d 223, 227 & n.5 (11th Cir. 1982) ("Substantial evidence sets the parameters for our review of the Secretary's adverse final determination in this [overpayment of benefits] case.").

The majority explains that Coulston bore the burden of proving that he was not at fault. That is true enough. But it misses the point. We are not here concerned with whether Coulston met his burden of proving to the Commissioner that he was not at fault. Our sole concern is to determine whether the Commissioner's ultimate decision — that Coulston was at fault, and was not entitled to a waiver of repayment — was based upon "substantial evidence." If so, we are obliged to affirm the Commissioner's decision. See 42 U.S.C. § 405(g).

I conclude that the ALJ's decision is *not* supported by "substantial evidence," for the simple reason that the Commissioner introduced no evidence to controvert Coulston's account of events. The Commissioner failed to come forward with any evidence supporting its position that Coulston was at fault. Coulston, for his part, presented evidence (much of which the ALJ did not discredit) that he had relied upon the SSA's representations that the money was his. Hence, the ALJ's ultimate decision that Coulston was at fault lacked support in the record — substantial or otherwise. As a matter of logic, the utter absence of evidence in the record cannot be deemed "substantial."[1]

The majority apparently confuses Coulston's administrative burden (proving non-fault) with his appellate burden (demonstrating a lack of "substantial evidence"). For that reason, I cannot join in the majority opinion. Reviewed under the proper standard, the record reveals no substantial evidentiary basis to support the Commissioner's conclusion that Coulston was at fault.

---

[1] The one exception to this rule of thumb is when a *claimant* fails to present evidence. Then, the Commissioner ought to deny relief on the ground that the claimant has not met his burden of proof. If, in such a case, the Commissioner also failed to present evidence, the total absence of any evidence in the record would not preclude our affirmance — despite the ostensible absence of "substantial evidence." That's because the Commissioner's ruling would be based purely upon the burden of proof, not upon the evidentiary merit of the claimant's contentions.

II

The majority properly proceeds to examine the second step of the overpayment analysis, whether Coulston's repayment "would defeat the purpose of [Title II] or would be against equity and good conscience."  42 U.S.C. § 404(b).  The majority compares Coulston's monthly income with the poverty line and determines that Coulston could not afford to repay the SSA.  Yet the record suggests the possibility of a different answer.  Coulston receives about $650 a month in SSA benefits, and he earns about $500 per month as a part-time dishwasher.  Adding those sums together, his total monthly income exceeds $1100.  Given Coulston's remarkably low estimate of his monthly expenses, he appears to have at least $500 per month in disposable income.  Presumably, some portion of that income could be used to repay the SSA without defeating the purpose of social security.

These calculations are, of course, my own findings of fact.  The majority's conclusion that Coulston cannot repay the SSA is equally dependent on implicit fact-finding.  Our disagreement illustrates why circuit judges are properly loathe to find the facts on appeal.  See Cox v. Apfel, 160 F.3d 1203, 1210 (8th Cir. 1998).  Faced with a fact-dependent impasse, the majority ought to remand to permit the ALJ to make "ability to repay" findings.[2]

Despite the presence of this potential factual dispute, however, we need not remand.  A claimant's reliance on agency representations *automatically* establishes that repayment would offend equity and good conscience.  See Gladden, 139 F.3d at 1223.  Much like the claimant in Gladden, Coulston relied upon a host of SSA representations in assuming that the lump-sum check belonged to him.  I am hard-pressed to overlook Gladden's clear language in favor of the majority's own calculation of Coulston's ability

_____

[2]The ALJ never calculated Coulston's ability to repay (the second step) since he found Coulston "at fault" (the first step).

-8-

to repay.  I deem <u>Gladden</u> controlling, and I would avoid analyzing Coulston's financial picture entirely.  The majority's methodology leads ineluctably to the conclusion that this matter ought to be remanded — a conclusion in considerable tension with <u>Gladden</u>.

I respectfully concur in the judgment of the court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.