People v Fraser (2025 NY Slip Op 51353(U))

[*1]

People v Fraser

2025 NY Slip Op 51353(U)

Decided on August 28, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Otis Fraser, Defendant.

Docket No. CR-001228-25BX

For the Defendant: 
The Legal Aid Society
(by: Addison Jeske, Esq.)
For the People:
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Erin Cauley)

Deidra R. Moore, J.

On December 28, 2024, Otis Fraser (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 511[2][a][iv], aggravated unlicensed operation of a motor vehicle, and related charges. Defendant was released with a desk appearance ticket and was subsequently arraigned in Bronx County Criminal Court on January 17, 2025.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution failed to exercise due diligence and make reasonable inquiries and efforts to disclose all discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[3] and 30.30 is GRANTED.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On January 17, 2025, the Defendant was arraigned on a top charge of V.T.L. § 511[2][a][iv], aggravated unlicensed operation of a motor vehicle in the second degree, an unclassified misdemeanor. The case was adjourned to February 13, 2025, for conversion and discovery compliance.
On February 13, 2025, the prosecution filed and served a DMV abstract and the complaint was deemed an information. The case was adjourned for discovery compliance to March 27, 2025.
On March 27, 2025, the People were not discovery compliant, and the case was adjourned to May 8, 2025. On April 11, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On April 21, 2025, defense counsel e-mailed the assigned prosecutor, asserting that certain discoverable items, including the radio run materials, had not been disclosed. On May 2, 2025, the People shared with Defendant the radio run materials, including a radio run audio file and an Event Chronology, and filed and served a Supplemental Certificate of Compliance ("SCOC1").
On May 6, defense counsel sent an e-mail to the assigned prosecutor stating that additional discoverable items were missing from the shared discovery.
On May 8, 2025, the parties appeared before this Court for a discovery conference, at which time a motion schedule was set. Following the discovery conference, the People shared additional materials with the defense on May 9, 2025, and filed and served another supplemental certificate of compliance ("SCOC2").
By motion dated June 6, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on July 8, 2025. The defense reply followed on July 28, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 511[2][b]).
The speedy trial clock is statutorily bound to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession from a non-exhaustive list of twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, the People are nonetheless required to "make a diligent, good faith effort to ascertain the existence of [this material]" and make it available to the defense (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum [*2]material or information which the defense may obtain by subpoena (C.P.L. § 245.20[2]).
After the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose all material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity turns on whether the People exercised due diligence to comply with their discovery obligations prior to the COC's filing. While the People bear the burden of establishing that they acted with such diligence, "belated disclosure[s] will not necessarily establish a lack of due diligence or render an initial COC improper" (People v Bay, 41 NY3d 200, 212 [2023]). Analysis of the People's due diligence is "fundamentally case-specific," and "will turn on the circumstances presented" (id.).
C.P.L. Article 245 now includes instruction for courts assessing due diligence in the discovery context. Pursuant to C.P.L. § 245.50[5], courts must analyze the totality of the People's efforts to comply with their obligations under Article 245, rather than assessing the People's efforts "item by item." C.P.L. § 245.50[5][a] enumerates a non-exhaustive list of factors to be considered when determining due diligence, instructing courts to look to:
1. the efforts made by the prosecutor to comply with the requirements of Article 245,
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
Finally, C.P.L. § 245.50[5][b] instructs courts that a due diligence assessment should be based on the combination of factors outlined in C.P.L. § 245.50[a], with no one factor being determinative.

DISCUSSION
I. The Parties' Arguments
A. The Items in Question
The defense moves to invalidate the COC based on multiple disputed items, some of which Defendant contends were belatedly turned over, and some of which have not yet been disclosed.
First, the defense contends that the prosecution belatedly disclosed the radio run materials including the radio run audio file, the certification and heading for the radio run, and the Event Chronology (C.P.L. § 245.20[1][e] and [g]. Defendant avers the People also belatedly disclosed the Vehicle Report and the Defendant's Entity Report (C.P.L. § 245.20[1][e]). The defense further alleges that the prosecution has yet to disclose the Defendant's ZOLPA, the Pre-Arraignment Notification Report, and the Roll Call Log (C.P.L. § 245.20[1][e], as well as the central personnel index sheets ("CPIs") for testifying officers (C.P.L. § 245.20[1][k]).
B. The Defendant's Argument
The defense argues that the COC is invalid because the prosecution did not exercise due diligence to comply with their discovery obligations prior to the COC's filing. Defendant notes that the People demonstrate scant effort to comply with their discovery obligations; the assigned prosecutor sent one e-mail to the precinct requesting discovery on February 11, 2025, and submitted a request for radio run materials. The defense further points out that, had the People reviewed their own discovery, they would have been aware that the radio run materials were outstanding, as the disclosed discovery included an ICAD and the "mere existence of an ICAD indicated that a Radio Run existed" (Defense Motion at 15). Defendant further points out that the People did not comply with their obligations to serve discovery within thirty-five days after arraignment (C.P.L. § 245.10[1][a][ii]),[FN1]
instead first serving discovery on the eighty-fourth chargeable day.
Defendant argues that the case is not a complex one, and that the volume of discovery was relatively small, making the belated and outstanding items a significant portion of the total discovery. Defendant notes that the contents of the Vehicle Report and radio run materials are not duplicative or insignificant, as these items contain information "relevant to hearings in this case" (Defense Reply at 22). Finally, the defense points out that the prosecution did not "self-report[] the error[s]" and contends that the prosecution's failure to disclose the still outstanding items "continues to impede the Defense's ability to effectively investigate this case and prepare [*3]for trial" (id.).
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, making a general discovery request to the 46th Precinct on February 11, 2025. In this request, the assigned prosecutor requested, in addition to specifically listed items, "ANY AND ALL other evidence. . . that was generated or related to this arrest that was not included in the original arrest packet provided to the Bronx District Attorney's Office" (People's Opposition Exhibit 2).
Additionally, the People "sent a request through [the] 911 request system" on January 23, 2025 (People's Opposition at 8). The People explain that the request "communicat[es] the arrest number, docket information, defendant information, time and date of the occurrence, and ICAD number to the NYPD," after which "the Communications Division of the NYPD. . . searches through radio runs and 911 calls to discern whether there are any recordings that pertain to each case (id.). In the instant matter, the People received in response only a document stating that the request had "returned NEGATIVE results" (People's Opposition Exhibit 3). Upon being notified by defense counsel that the shared ICAD was an indication of outstanding radio run materials, the assigned prosecutor consulted with her supervisor; the supervisor advised that "sometimes 911 results do not come through the system correctly, and the People should send in another request because there likely are records if there is an ICAD" (People's Opposition Exhibit 5). The prosecution made a second, expedited request through the 911 system on April 30, 2025. The People ultimately received the 911 system materials on May 1, 2025, and shared them with the defense on May 2, 2025.
The People argue that Entity Reports are not discoverable because they are "not within the People's custody or control"; the People further aver that any Entity Reports previously received by defense counsel in other cases were "likely disclosed as a courtesy" (People's Opposition at 12). Nevertheless, the People provided the defense with a "courtesy copy" of the Entity Report.
The People note that they requested the ZOLPA and Pre-Arraignment Notification Report from the arresting officer, who responded, "as for the ZOLPA and the pre-arraignment report I have no clue what those are so I'm going to say no we didn't do those" (People's Opposition at 13-14). The People further argue that the ZOLPA is not automatically discoverable, asserting that this document "is duplicative of multiple items already received by defense" and "is not related to the subject matter of the case or relevant to any offense charged" (id at 14).
Finally, the prosecution contends that the Central Personnel Indexes ("CPIs") of the two testifying officers are not discoverable, as they contain no substantiated or unsubstantiated complaints, and thus no potential impeachment information.
II. The Court's Analysis
A. Discoverability of Contested Items
i. ZOLPA
The ZOLPA is a document generated from the NYPD Online Prisoner Arraignment Database and contains information detailing a case's progress from arrest to arraignment. The ZOLPA includes the name of the arresting officer, the top arrest charge, and information about whether an arrestee was held in custody for arraignment or released with a desk appearance ticket. The ZOLPA also documents the times of particular events between arrest and arraignment, including the time that the arrest paperwork was generated and the time this paperwork was given to the District Attorney. The ZOLPA also contains notes from the arresting officer. Consequently, the Court finds that this document is discoverable pursuant to C.P.L. § 245.20[1][e] (see People v. JMW, 2024 NY Slip Op 51249(U) [Crim Ct, Kings County] ["Inasmuch as the Prisoner Arraignment Database documents the names of the officers that participated in the defendant's arrest processing, contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment, this item is automatically discoverable."]
ii. Entity Report
The Entity Report is generated from the NYPD's Domain Awareness System ("DAS"), a database which centralizes information from multiple NYPD data sources (People v Robert K, 2024 NYLJ LEXIS 2228, [Crim Ct, New York County]). An Entity Report presents a comprehensive overview of the NYPD's knowledge about a particular person; this report is typically generated for an arrestee at the time of arrest. Here, the Defendant's Entity Report was generated by the arresting officer at 3:33 a.m. on December 28, 2024 (Defense Motion Exhibit N).
The People contend that the Defendant's Entity Report is not discoverable because it is not within the People's possession. However, C.P.L. § 245.20[2] provides that items and information in the custody of "any New York state or local police or law enforcement agency" shall be deemed to be in the People's possession. Consequently, whenever the NYPD generates this document as part of an arrest, the People must disclose it pursuant to C.P.L. § 245.20[1][e] (People v Robert K, 2024 NYLJ LEXIS 2228, *7-8 [Crim Ct, New York County] ["Insofar as the NYPD generated this report and included it in the defendant's arrest packet, it formed part of the police investigation and, as such, is clearly related to the subject matter of the case."]).
iii. Central Personnel Indexes
The Court agrees with the People that the Central Personnel Indexes are not automatically discoverable, as the People must only disclose substantiated or unsubstantiated complaints against a testifying officer. Here, the prosecution contends that they have disclosed impeachment materials related to all substantiated and unsubstantiated complaints against testifying officers. The defense, however, argues that the prosecution must disclose the CPIs themselves, which include complaints labeled "exonerated" and "info and intelligence." Multiple [*4]courts have held that exonerated and unfounded complaints are not discoverable as potential impeachment material (see e.g. People v Barralaga, 153 NYS3d 808 [Crim Ct, New York County 2021]; People v Montgomery, 159 NYS3d 655 [Sup Ct, New York County 2022]). Consequently, unless there is additional information that sheds light on the nature of the complaint labeled "info and intelligence," the Court finds that the People have fulfilled their discovery obligations with respect to the CPIs.
B. Due Diligence Under Article 245.50[5]
The Court cannot find that the People carried their burden to demonstrate that they acted with the requisite due diligence. First, the People did not comply with the timeline for disclosure set out in C.P.L. § 245.10[1][a][ii], which requires disclosure of automatically discoverable materials within thirty-five days after arraignment when a defendant is not in custody. Moreover, in recounting their efforts to comply with their discovery obligations, the People detail only one e-mail sent to the 46th Precinct, and a request through the 911 system. The People do not seem to have reviewed their own discovery for completeness and accuracy prior to certifying discovery compliance and trial readiness. Had the People reviewed the items in their possession, they would have concluded, as defense counsel did, that the radio run materials were missing (compare People v Ortega, 2025 NY Misc LEXIS 6530, *15 [Crim Ct, Bronx County] ["Upon requesting 911 materials and receiving a response that none existed, the prosecution subsequently made an additional, expedited request [as] [t]he assigned prosecutor correctly believed the negative response to be an error based on other items of discovery."]; see also People v Martinez, 229 NYS3d 329, 336 [Sup Ct, Kings County 2025] ["Our discovery statute describes a proactive prosecutor making reasonable inquiries, not a courier blindly rubber-stamping delivery from the police to the defendant."]).
While the assigned prosecutor is to be commended for consulting with a supervisor and subsequently making an expedited request for the outstanding materials from the 911 system, the supervisor's response — that "sometimes 911 results do not come through the system correctly" — seems to indicate that the cause of the discovery lapse is a systemic problem which should be addressed. Part of the People's discovery obligations under Article 245 include maintaining a flow of information between law enforcement agencies and the District Attorney's Office. C.P.L. § 245.55[2] directs that "[t]he district attorney and the assistant responsible for the case. . . shall endeavor to ensure that a flow of information is maintained between the police and other investigative personnel and his or her office sufficient to place within his or her possession or control all material and information pertinent to the defendant and the offense or offenses charged." If the NYPD's 911 request system can be "faulty" (People's Opposition at 10), and this is a known issue within the District Attorney's Office, some corrective measure or safeguard should be implemented to ensure that discoverable items from this system do not slip through the cracks.
The Vehicle Report was first requested by defense counsel on April 21, 2025, and was disclosed on May 9, 2025. While the omission of the Vehicle Report was rectified, the Court does not agree that this item is duplicative of the Arrest Report and therefore insignificant. Both the Vehicle Report and the Arrest Report indicate the basis for the car stop — the degree of tint on [*5]the car's windshield; however, these documents use differing language to describe the level of tint, a trait which, in the absence of a tintometer, is subjectively interpreted and may become the subject of litigation. Moreover, the reports were each filled out by a different officer who was designated by the prosecution as a testifying witness (People's Opposition Exhibits 1, 8, and 9). Ultimately, the Vehicle Report could prove useful to the Defendant when litigating the legality of the traffic stop.
The ZOLPA and the Pre-Arraignment Notification Card are likely to be of limited substantive value to the Defendant. However, particularly as the ZOLPA could contain notes from the arresting officer, the prosecution should have made further inquiry into this document's existence. It is not evident from the arresting officer's response — "I have no clue what those are so I'm going to say no we didn't do those" — that the ZOLPA does not exist. The officer's unfamiliarity with the document name, without further context, does not establish its non-existence.
The instant case is not a complex one requiring voluminous discovery. While the prosecution subsequently rectified the most important omissions, the balance of factors under C.P.L. § 245.50[5][a] weighs against a finding that the People exercised due diligence and made reasonable inquiries prior to the COC's filing.
The certificate of compliance, filed April 11, 2025, is invalid and therefore failed to toll the speedy trial clock.
The Court makes no finding as to the validity of the subsequent supplemental certificates of compliance.

THE CPL § 30.30 CALCULATION
The criminal action commenced with Defendant's first appearance on the desk appearance ticket; however, the first day counted for speedy trial purposes is the next day, January 18 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on April 11, 2025. As discussed supra, the COC was invalid and failed to toll the speedy trial clock. Assuming arguendo, that the prosecution's first supplemental certificate of compliance was valid, the earliest date the speedy trial clock was tolled was May 2, 2025 (January 18, 2025 — May 2, 2025 = 105 days).
At least 105 days are chargeable to the People, and their speedy trial period has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: August 28, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:"When the defendant is not in custody during the pendency of the criminal case, the prosecution shall perform its initial discovery obligations within thirty-five calendar days after the defendant's arraignment on an indictment, superior court information, prosecutor's information, information, simplified information, misdemeanor complaint or felony complaint" (C.P.L. § 245.10[1][a][ii]). However, when discoverable materials "are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution, the time period [for disclosure] may be stayed by up to an additional thirty calendar days without need for a motion" under C.P.L. § 245.70[2] (C.P.L. § 245.10[1][a]).