People v Smith (2026 NY Slip Op 50277(U))

[*1]

People v Smith

2026 NY Slip Op 50277(U)

Decided on March 6, 2026

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 6, 2026
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstL. Smith, Defendant.

Docket No. CR-026150-25BX

For the Defendant:Abigail KasdinThe Legal Aid SocietyFor the People: 
Bronx ADA Sarah Gonzalez

David L. Goodwin, J.

When the defense challenges a certificate of compliance (COC), the "key question" is always whether the People have met their burden of showing "reasonable" efforts to comply with their statutory discovery obligations. People v. Bay, 41 NY3d 200, 211, 213 (2023) (internal alterations omitted); see C.P.L. § 245.50(5)(a) (2026). Without an adequate record, however, the People run the risk that their COC will be vulnerable to challenge no matter their actual efforts, so long as the defense has identified a substantial discovery lapse.
Such is the case here. Defendant L. Smith [FN1]
challenges the People's COC based on, among other things, the nondisclosure of body-worn camera footage from the search of his car, during which contraband was allegedly discovered. The People do not dispute Smith's characterization of the missing discovery as a real lapse. Yet in responding to Smith's motion, the People do not explain their efforts to comply with their discovery obligations, either before declaring ready or since. The People also have not provided the missing footage or explained their efforts to obtain it.
As a result, and while the alleged omission is not systemic, the People have not met their burden of defending against Smith's challenge. Because the "key question" cannot be answered in the People's favor, Bay, 41 NY3d at 211, the branch of Smith's motion seeking dismissal is GRANTED.I. Background
Alleged Offense Conduct, Charges, and ArraignmentAccording to the accusatory instrument, on September 19, 2025, officers at a vehicle checkpoint signaled for defendant Smith to stop his car. He did not; instead, he allegedly fled the checkpoint, driving the wrong way down a one-way street and through several red lights, with police in pursuit. After Smith ended up in traffic congestion, his companion (apprehended later) got out of the car and ran away on foot, while Smith himself was arrested. People's Resp., Ex. B at 1—2.
The accusatory instrument implies, but does not quite say, that the car was then searched by police officer Cruz. Officer Cruz saw a purple liquid substance in the rear driver's side door pocket, which Officer Cruz identified as promethazine with codeine based on training in the recognition of controlled substances. Id. at 2.
Smith was charged with reckless driving (V.T.L. § 1212), third-degree unlawful fleeing from police (P.L. § 270.25), second-degree reckless endangerment (P.L. § 120.20), and seventh-degree criminal possession of a controlled substance (P.L. § 220.03). Id. at 1. He was arraigned September 20, 2025.
The Certificate of Compliance and Supplemental Certificate of ComplianceOn December 18, which was either the 89th or 90th day depending on when the case technically commenced, the People declared ready for trial and filed their certificate of compliance (COC). According to their COC, the People had disclosed, among other things, activity logs for 14 officers and body-worn camera footage for 15 officers.
Among the officers on those lists were Officers Chavys and Olatunji, two of the three mentioned in the accusatory instrument. But Officer Cruz, the only officer mentioned in connection with the implied vehicle search, was not on either list—even though the People also filed a supporting deposition from Officer Cruz on the same day in service of converting the complaint to an information. See Defense's Mot., Ex. 1 at 1—3; see also Supporting Deposition of Officer Cruz.
The People submitted two supplemental COCs the following day, reflecting disclosure of certain lab results and one officer's activity log. Defense's Mot., Ex. 2 at 2; People's Resp., Ex. A at 2. No other supplemental COCs have been filed since.
Discovery ConferralA few days later, on December 22, defense counsel emailed the People to address outstanding discovery items. Among those items were body-worn camera footage of the car search, footage from additional officers present at the checkpoint and arrest, and the property voucher/chain of custody for the alleged drugs. Defense's Mot., Ex. 3 at 3.
The People responded on January 5. They had been able to provide the property voucher/chain of custody documents. However, regarding the body-worn camera footage, the People said only that they had shared all that was available, asking, "[T]here was no footage of the vehicle search/recovery of the drugs in any of those . . . shared?" Id. at 2.
Defense counsel thanked the People for providing the vouchers and confirmed that counsel "did not see the vehicle search in the [footage] I have, nor do I have [footage] from all the officers at the checkpoint or the arrest." Id. at 1.
Defense counsel followed up a few days later, on January 12, to ask about other allegedly missing documents: police checkpoint paperwork and lab report results pertaining to Mr. Smith. Defense's Mot., Ex. 3 at 1. That appears to have been the final discovery conferral in the case.

II. The Omnibus Motion and People's Response
Smith filed a counseled omnibus motion on January 22, 2026. In the relevant branch, Smith contends that the COC must be invalidated, and the matter dismissed on speedy trial C.P.L. § 30.30 grounds, because the People (1) belatedly disclosed the voucher and chain-of-custody material and (2) never disclosed certain discovery, such as the body-worn camera footage, including the car-search footage; the police checkpoint paperwork; lab results; and other allegedly missing material. Defense's Mot. at 9.
The People respond to Smith's motion via a short attorney affirmation and a nine-page memorandum of law, four pages of which address the dismissal request and five pages of which respond to the request for hearings and other relief. See generally People's Resp. In the memorandum, the People argue that their diligence is demonstrated by their conferrals with the defense and the filing of one COC and two supplemental COCs, as well as their sharing of the ZOLPA and ICAD [FN2]
(two of the documents listed as outstanding) in tandem with the filing of their motion response. See People's Resp. Mem. at 4. 
But the People do not make a record, sworn or otherwise, of their efforts to discharge their discovery obligations either before or after declaring ready. For instance, the portion of the response on the footage from the search says, in effect, that the People have shared all footage in their possession. People's Resp. Mem. at 3. The primary exception pertains to the voucher and chain of custody which, as discussed above, were the only omissions corrected by conferral
The People also concede that they are not certain whether police checkpoint paperwork exists, representing that they made "multiple additional requests" to officers and liaisons for that paperwork. People's Resp. Mem. at 3. Attached to the People's response is a short set of emails pertaining to a controlled substance and firearm analysis form. See People's Resp., Ex. C.
In a short reply, Smith reiterates his original arguments, including that he is still missing "BWC of the vehicle search, BWC from two additional officers at the checkpoint, and BWC from two additional officers present at [his] arrest." Defense's Reply at 3 (pdf pag). Smith emphasizes that Officer Cruz was mentioned in the accusatory instrument itself, that his omission from the COC was itself obvious, and that the People have apparently not taken any action to attempt to obtain the footage. See id. at 3—4 (pdf pag.). Smith "cannot prepare for hearings and trial without seeing how the officers conducted the vehicle search and without seeing what they found." Id. at 4 (pdf pag.).
The motion is now fully briefed and ripe for decision.

III. Legal Standard
In a case like this one, where the top count is a misdemeanor punishable by a custodial sentence of more than three months, the People must be ready for trial within 90 days. C.P.L. § [*2]30.30(1)(b). If they are not ready within that 90-day window, the accusatory instrument must be dismissed on motion by the defense. C.P.L. §§ 30.30(1)(b), 170.30(e); People v. Labate, 42 NY3d 184, 190 (2024).
The People must comply with their discovery obligations before stopping the speedy trial clock by declaring ready for trial. See C.P.L. § 30.30(5)(a). The People do so by, among other things, filing a COC.
A COC is valid, and stops the clock, if the People meet their burden of showing that they exercised due diligence and good faith in fulfilling their discovery obligations. C.P.L. §§ 30.30(5)(a)—(b), 245.50(6); People v. Bay, 41 NY3d 200, 211 (2023). The People do so by making "reasonable" efforts and inquiries to comply with the discovery statute. Bay, 41 NY3d at 211. The "key question" is always whether the People's efforts were reasonable. Id. at 211, 213.
Factors relevant to the People's diligence are set out in C.P.L. § 245.50(5)(a) and include, among other things, the volume of discovery provided as compared to what is allegedly outstanding, whether any missing discovery was duplicative, and whether the People took remedial action once alerted by the defense to any oversight. C.P.L. § 245.50(5)(a). These factors must be assessed holistically, with no one factor or shortcoming being determinative. Id. § 245.50(5)(b); People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept. 2024).
Because they bear the burden of showing diligence, the People must ensure that the "record" is "properly developed" so that a court may "consider whether the People exercised due diligence" within the meaning of the discovery laws.[FN3]
People v. Martinez-Perez, 87 Misc 3d 130(A), 2025 NY Slip Op. 51648(U), at *1 (App. Term, 1st Dept. 2025). Otherwise, they risk invalidation of the COC based on the burden the law assigns, regardless of their actual efforts. See, e.g., People v. Adams, 2026 NY Slip Op 50233(U), at *2 (App. Term, 1st Dept. 2026) (concluding that the People did not meet their burden when, among other things, they "provide[d] no information as to what they initially requested of the police department or when they requested it"); People v. Zeigler, 2026 NY Slip Op 50232(U), at *2 (App. Term, 1st Dept. 2026) (concluding that the People did not meet their burden when, among other things, they "made only vague assertions regarding their efforts to obtain the required items"); cf. Carr v. Saul, 593 U.S. 83, 89 (2021) (observing, in the context of issue exhaustion, that the "critical feature that distinguishes adversarial proceedings from inquisitorial ones is whether claimants bear the responsibility to develop issues for adjudicators' consideration").

IV. Discussion
As explained both at the outset and in the section above, the core inquiry in a COC [*3]challenge is always whether the People discharged their discovery obligations with due diligence, measured by the reasonableness of their efforts and outreach. That task is complicated here, however, by the lack of a "properly developed" record regarding those efforts. Martinez-Perez, 2025 NY Slip Op. 51648(U), at *1. Meanwhile, while the discovery shortcomings identified by the defense are not manifold, they are also real and, in the scheme of things, immediately apparent from the record. Although there might be reasonable explanations for those omissions, none was forthcoming.
Accordingly, on this record, the People have not met their burden, however minimal it may have been, of establishing that they made reasonable efforts and inquiries sufficient to outweigh any lapses. As they have not mounted an adequate defense of their COC in the face of a plausible challenge, their COC is not valid.
For the sake of simplicity, the discussion that follows focuses on the body-worn camera from the vehicle search. The other items, while also relevant, present a less-stark omission.
As Smith points out, the accusatory instrument clearly names Officer Cruz in connection with the recovery of alleged contraband from Smith's car. The subsequent omission of Cruz from the relevant portions of the COC, and from the discovery provided to the defense, is both noticeable and apparent—especially as the People obtained a supporting deposition from Cruz on the day they declared ready, meaning they must have been in contact with him.
There is also nothing to suggest that the missing footage was in any way duplicative of other discovery actually provided. The missing body-camera footage from Cruz would potentially be of limited significance if footage from other officers involved in the search had been disclosed to the defense; after all, one of the § 245.50(5)(a) factors is "whether the belated discovery was substantively duplicative." But Smith claims that no footage was provided of the search of his car, which the People do not dispute. Cf. People v. Santos, 68 NY2d 859, 861 (1986) (requiring the People to controvert the factual basis for the defense's motion).
Taking a step back: the car search related to only a small part of the overall misconduct alleged in this case. The checkpoint, chase, and arrest are the main events; the record indicates that some (if not all) body-worn camera footage was provided for each of those stages. The fruits of the search, allegedly promethazine codeine, are at best incidental. And, of course, charging decisions are within the considerable discretion of the prosecution, see Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978), so the People were entitled to bring a drug charge if the evidence supported it.[FN4]

Once the charge was brought, though, the People were required to find and disclose [*4]discoverable material in connection with it. Smith persuasively alleges that the People did not do so, impeding his ability to pursue available defenses and to "prepare for hearings and trial without seeing how the officers conducted the vehicle search and without seeing what they found." Defense's Reply at 4 (pdf pag.).
This oversight could potentially be remediated if the record permitted a determination that the People's outreach and efforts were reasonable. Here, though, it does not.
For starters, the People do not detail their pre-readiness discovery outreach regarding the outstanding material or otherwise, except for a short email chain about the lab results for the contraband reproduced in their Exhibit C. The People's response affirmation is instead dedicated to the procedural posture of the case and the offense conduct. See People's Resp. Aff. at 1—4 (pdf pag.). To the extent that the unsworn memorandum of law would be relevant to outreach, little is detailed there either. See People's Resp. Mem. at 2—4.
To be clear, the People are not required to reproduce every email, jot, and tittle arising from their discovery efforts. But some record is often necessary if, as here, the defense's challenge has some heft and the alleged lapses remain unresolved. Otherwise, there is no way to assess the reasonableness of the People's efforts.
And regarding the lack of resolution, the People also do not substantially document their post-readiness outreach efforts beyond their correction of the voucher/chain of custody issue, their attempts to resolve an inconsistency regarding the lab report, and their acquisition of the ICAD and ZOLPA after defense counsel reached out. See People's Resp. Mem. at 2—4; see also People's Resp., Ex. C.
To be clear, as conferral yielding acquisition of missing material satisfies a "number of the due diligence factors" under the revised § 245.50(5)(a), those attempts do weigh in favor of the People. People v. Whitney, — Misc 3d —, 2025 NY Slip Op. 25248, at *5 (N.Y.C. Crim. Ct., Bronx Co. 2025) (David, J.).
But there is nothing provided at all related to the core issues of the missing body-worn camera footage. The People may have tried to obtain the footage in response to the defense outreach and motion, but if they did so, they have neither documented their efforts nor made any mention of them.
To sum up, the key question is always whether the People made reasonable inquiries to ascertain and provide all automatically discoverable material. Bay, 41 NY3d at 211, 213. As Smith identified at least one real, significant lapse, he has successfully called the People's diligence into question. The People thus should have defended their diligence by making a record of their efforts to obtain and disclose all relevant discovery. After all, and especially after the recent revisions to Article 245, mistakes, oversights, and errors can be fixed, and those that cannot (or have not been) may nevertheless be outweighed by reasonable efforts that, for whatever reason, simply did not uncover a particular document.
Here, though, the People did not mount an adequate defense of their diligence—and, as they bear the burden, the key question cannot be paired with an answer in their favor. Is it possible that their reasonably comprehensive discovery package was the result of diligent outreach and efforts? Of course—but it could equally have been the result of a single email sent shortly before the 90-day § 30.30 window was otherwise to expire. Could the People have been moving heaven and earth to obtain the missing footage from the car search from the moment defense counsel pointed out the omission during conferral? Absolutely—but the People have not said so, and defense counsel has no obligation or incentive to make the People's record for them.
Thus, on this record, the People's unexplained lapse is not paired with sufficient other evidence to cast the balance of the relevant § 245.50(5)(a) factors in their favor. By extension, the People have not shown that they made reasonable efforts to comply with their discovery obligations.

 * * *
Cases can sometimes be resolved on who bears the burden, even when parties have done what they can to develop a record. See Rinaldi & Sons, Inc. v. Wells Fargo Alarm Serv., Inc., 39 NY2d 191, 196 (1976) ("Plaintiff has the burden of proving his case by a fair preponderance of the credible evidence. If, at the close of the proofs, the evidence as a matter of logical necessity is equally balanced, plaintiff has failed to meet his burden and the cause of action is not made out[.]"); see also Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000) ("Generally, if the evidence is in equipoise, the party with the burden of proof loses."). Here, the People have not done enough to establish reasonable efforts in connection with their discovery obligations and, as they bear the burden, ambiguity in the record does them no favors.
Accordingly, the branch of Smith's motion seeking to invalidate the COC is GRANTED. The People's COC is DEEMED INVALID, and as a result, did not stop the § 30.30 clock. Since at least 91 days elapsed before any valid statement of readiness, and because the People do not rely on any other statutory exclusions, dismissal is "require[d]." People v. Labate, 42 NY3d 184, 190 (2024). The accusatory instrument is DISMISSED AND SEALED pursuant to C.P.L. §§ 30.30(1) and 170.30(1)(e). The remainder of Smith's motion is DENIED as academic.
Defense counsel is directed to serve the People with a copy of this order along with a notice of entry.
Dated: March 6, 2026Bronx, NYDavid L. GoodwinJudge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:The ZOLPA "is a document generated from the NYPD Online Prisoner Arraignment Database and contains information detailing a case's progress from arrest to arraignment," such as "the name of the arresting officer, the top arrest charge, and information about whether an arrestee was held in custody for arraignment or released with a desk appearance ticket." People v. Fraser, 86 Misc 3d 1266(A), 2025 NY Slip Op 51353(U), at *3 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Moore, J.). An ICAD report "memorializes in shorthand statements made to [a] 911 operator." United States v. Pizarro, No. 17-CR-151, 2018 WL 2089346, at *1 (S.D.NY May 4, 2018) (Nathan, J.).

Footnote 3:This is in line with other § 30.30 disputes where the People bear the burden of showing that exclusions apply and must specifically oppose the factual bases for a defense motion. See People v. Santos, 68 NY2d 859, 861 (1986); see, e.g., People v. Cole, 73 NY2d 957, 958 (1989) ("The sworn allegations of fact essential to support defendant's motion were conceded by the People when they failed to submit opposition papers contesting these allegations."); People v. Lisene, 201 AD3d 738, 740 (2d Dept. 2022) (observing that the People were required to explain a change in readiness status, but "failed to do so, instead merely reiterating, without explanation, that they had stated ready on the dates in question").

Footnote 4:It is worth noting that promethazine itself—"an antihistamine that has been FDA-approved since 1951 to treat allergic conditions, nausea and vomiting, and motion sickness," Dr. Deepa J. Shiwcharan, Note, Purple or Pink: Time to Rethink the Availability of Promethazine with Codeine, 52 Hofstra L. Rev. 243, 248—49 (2023)—does not itself appear to be a controlled substance listed in P.H.L. § 3306. See P.L. § 220.00(5) (defining "controlled substance" as "any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law"). However, the record suggests that the mixture tested positive for codeine, as the accusatory instrument alleged.